IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 2:07-cr-165-MHT |
| | ) | |
| ANDREAS JEJUAN SMITH | ) | |

UNITED STATES' RESPONSE TO MOTION TO SUPPRESS SUGGESTIVE
OUT OF COURT IDENTIFICATION

Comes now the United States of America, by and through Leura G. Canary, United States Attorney for the Middle District of Alabama, and files the instant Response to Defendant Andreas Jejuan Smith's Motion to Suppress Suggestive Out of Court Identification. (Doc. # 15.) For the reasons set forth below, the United States submits that the motion to suppress should be denied.

## I.  BACKGROUND

On June 22, 2007, around 10:17 a.m., the Compass Bank located at 3480 Eastern Boulevard ("Bank") was robbed. (Ex. 1.) According to Annette Nichols, the victim teller involved in the robbery, a lone African-American male entered the Bank, waited for her to become available,[1] and then handed her a note which stated: "This is a robbery." (*Id*. at p. 1.) The robber then ordered the victim teller to open the money drawers. (*Id*.) The victim teller unlocked the money drawers and pulled the top drawer out. (*Id*.) The robber then pulled two white tube socks out of his pocket. (*Id*. at p. 3.) Thereafter, he leaned over the counter and began to take currency out of the drawer placing it into the tube socks. (*Id*.) The robber then asked for more money. (*Id*. at p. 1.) The victim teller advised the robber that she did not have any more money, only coins, and the robber then fled the Bank. (*Id*.) At some point during this event, the robber informed the victim teller that he had a

---

[1] She was servicing another bank employee immediately before the robbery occurred.

weapon but he never displayed the weapon to the victim teller. (*Id*. at p. 3.)

The victim teller stated that the robber was wearing a baseball cap with a white rag underneath, a black t-shirt, and black colored jeans. (*Id*. at p. 2.) The victim teller asserted that the robber had a burn mark on the left side of his neck which had a bandage covering it. (*Id*.) The victim teller also stated that she had observed the robber at the front door prior to the Bank's opening. (*Id*. at p. 3.) She asserted that around 8:45 a.m., the robber came up the front door of the Bank, read on the Bank door that it did not open until 9:00 a.m., and then departed. (*Id*.) When asked if she could identify the robber, the victim teller responded that she "think[s] so." (*Id*. at p. 4.)

Four days later, on June 26, 2007, the victim teller was dining at Hooter's located on the Eastern Boulevard when she observed an African-American male who resembled the robber. (Ex. 2.) The male was working as a cook. (*Id*.) After the cook looked at her a second time, the victim teller contacted her boss who, in turn, contacted law enforcement. (*Id*.) Law enforcement arrived on the scene and detained the cook, Edmond T. Oliver. (*Id*.) A photographic array was developed which included Oliver. (*Id*.) The victim teller was presented with the photo array and did not identify Oliver as the robber. (*Id*.)

On July 2, 2007, the victim teller was presented with another photo array. (Exs. 3, 4.) This photo array was comprised of six African-American men, including Defendant. (*Id*.) The victim teller identified Defendant with 99% certainty as the bank robber. (Ex. 3.) She affixed her signature and dated the identification. (Exs. 3, 4.)

Defendant is charged in a four-count indictment with robbing a bank, shooting at federal officers, using a firearm in furtherance of a crime of violence, and possessing a firearm after having

been previously convicted of a felony. Count One of the Indictment alleges that Defendant, on June 22, 2007, "knowingly and willlfully [took] by force and violence and intimidation . . . money, belonging to and in the care, custody, control, management, and possession of Compass Bank located at 3408 Eastern Boulevard, Montgomery, Alabama, . . . in violation of Title 18, United States Code, Section 2113(a)." (Doc. # 3.) Count Two of the Indictment alleges that Defendant, on July 20, 2007, "knowingly and by means and use of a deadly or dangerous weapon," forcibly assaulted "Deputies of the United States Marshals Service, while they were engaged in and on account of the performance of their official duties, in violation of Title 18, United States Code, Section 111(b)." (*Id*.) Count Three of the Indictment alleges that, on that same date in July 2007, Defendant "knowingly used and carried a firearm during and in relation to and possessed a firearm in furtherance of, a crime of violence for which he may be prosecuted in a court of the United States, to-wit: forcibly assaulting a federal officer with use of a deadly weapon as charged in Count 2 . . . in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii)." (*Id*.) Finally, Count Four of the Indictment alleges that Defendant, on July 20, 2007, after having been previously convicted twice for the felony of receiving stolen property, "knowingly and willfully possess[ed] a firearm, in and affecting commerce, that is a loaded Smith & Wesson, .40 caliber semi-automatic handgun . . . in violation of Title 18, United States Code, Section 922(g)(1)." (*Id*.)

## II.  ARGUMENT

**A.     No Evidentiary Hearing is Required to Resolve Defendant's Motion to Suppress.**

The United States contends that no evidentiary hearing is required since the critical facts surrounding the identification are not in dispute and the matter can be resolved on the record alone. "The Constitution does not impose a *per se* rule requiring an evidentiary hearing in every case."

*United States v. Brown,* 441 F.3d 1330, 1349 -1350 (11th Cir. 2006) (citing *Watkins v. Sowders,* 449 U.S. 341, 349 (1981)); *see United States v. Smith,* 546 F.2d 1275, 1279-80 (5th Cir. 1977) (holding that "[a]n evidentiary hearing is not required where none of the critical facts are in dispute and the facts as alleged by the defendant if true would not justify the relief requested" (quotation marks omitted)).[2]

Here, Defendant's motion failed to allege sufficient facts to warrant a hearing on his claim that suppression is appropriate. In his motion, Defendant argued without explanation that the photo array was "suggestive" and that the victim teller was "coached by law enforcement to pick [him] out of the" photo array. (Doc. # 15 at ¶s 4, 6.) Defendant offered no factual allegations in support of his argument and presented no evidence suggesting that the techniques used by the police were "unduly suggestive." For example, Defendant neither asserts that law enforcement directed the victim teller's attention to his photograph nor does he argue that his photograph was prominently placed in the array. Based upon Defendant's lack of specificity and supporting factual allegations, it is absolutely unclear what aspect of the identification is being challenged. Under these circumstances, an evidentiary hearing is not necessary. *See United States v. Cooper,* 203 F.3d 1279, 1285 (11th Cir. 2000) (affirming denial of motion for an evidentiary hearing where underlying motion to suppress was "wholly lacking in sufficient factual allegations"); *United States v. Hadden*, 2007 WL 1135523 (S.D. Ga. 2007) (denying motion to suppress out-of-court eyewitness identification absent evidentiary hearing).

---

[2] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

**B.     The Court Should Deny Defendant's Motion to Suppress Because the Out-of-Court Identification Procedure Was Not Impermissibly Suggestive.**

The United States submits that Defendant's motion to suppress is due to be denied because the identification procedure at issue was routine and not unduly or impermissibly suggestive. A two-step analysis is used to determine if an out-of-court identification is admissible. *United States v. Diaz*, 248 F.3d 1065, 1102 (11th Cir. 2001). First, the court must determine whether the original identification procedure was "unduly suggestive." *Id*. If the court finds that the original identification was unduly suggestive, then the court must consider the totality of the circumstances, and whether the identification was reliable based upon the circumstances presented. *Id*. (citations omitted). The United States Supreme Court has enunciated five factors to be considered in determining reliability: (1) the witness' opportunity to view the defendant at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' description of the defendant prior to the identification; (4) the witness' level of certainty when identifying the defendant at the identification; and (5) the length of time elapsed between the crime and the identification. *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972). The court may also consider the strength of the other evidence against the defendant in the case. *United States v. Tisdale*, 817 F.2d 1552, 1554 (11th Cir. 1987).[3]

In this case, the photographic array included six similar looking African-American males who were similar in complexion, age, build, and had short hair. (*See* Ex. 4.) Without any urging or direction from law enforcement, the victim teller identified Defendant as the bank robber with 99%

---

[3] Interestingly, Defendant does not challenge the out-of-court identification of Defendant by the bank employee who immediately preceded Defendant at the victim teller's counter or the out-of-court identification of Defendant by his own father.

certainty. (*See* Ex. 3.) These facts do not support Defendant's contention that the identification procedure was impermissibly suggestive. *See Cikora v. Dugger*, 840 F.2d 893, 896-897 (11th Cir. 1988); *United States v. Walker*, 199 Fed. Appx. 884, 886-887 (11th Cir. 2006); *United States v. Smith*, 148 Fed. Appx. 867, 874-875 (11th Cir. 2005). In addition, Defendant has failed to proffer any evidence that might lead to a different conclusion.

Considering the *Biggers* factors,[4] there is sufficient indicia of reliability in the identification of the victim teller to permit the identification to be admitted to the jury. The victim teller had an opportunity to get a good look at Defendant while he was standing directly before her at the teller window and while he laid prostrate on the counter reaching into her money drawer. Her attention was sharply focused on him while the robbery was occurring and she was able to describe Defendant with particularity. Only ten days elapsed between the victim teller's first encounter with Defendant on the day of the bank robbery and the later identification. It also bears noting that the victim teller only asserted that Oliver "resembled" the robber and when Oliver was placed in a photo array, she could not identify him as the bank robber.[5] On the other hand, when Defendant was placed in a photo array, the victim teller quickly identified Defendant as the bank robber and was near certain of her identification. Accordingly, the United States submits that the identification of Defendant by the victim teller was sufficiently reliable and should not be suppressed.

Based on the foregoing, the United States respectfully requests that the Court deny Defendant's Motion to Suppress Suggestive Out of Court Identification without holding an

---

[4] Assuming *arguendo* that the identification procedure was impermissibly suggestive, the United States addresses the *Biggers* factors.

[5] The second bank employee who identified Defendant as the robber also did not identify Oliver as the robber when presented with the photo array.

evidentiary hearing.

    Respectfully submitted this the 19th day of October, 2007.

                                      LEURA G. CANARY
                                      UNITED STATES ATTORNEY

                                      /s/ Jerusha T. Adams
                                      JERUSHA T. ADAMS
                                      Assistant United States Attorney
                                      Post Office Box 197
                                      Montgomery, Alabama 36101-0197
                                      334-223-7280 phone    334-223-7135  fax
                                      jerusha.adams@usdoj.gov

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO.  2:07-cr-165-MHT |
| | ) | |
| ANDREAS JEJUAN SMITH | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on October 19, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Kevin L. Butler.

Respectfully submitted,

LEURA G. CANARY
UNITED STATES ATTORNEY


/s/ Jerusha T. Adams
JERUSHA T. ADAMS
Assistant United States Attorney
Post Office Box 197
Montgomery, Alabama 36101-0197
334-223-7280 phone    334-223-7135   fax
jerusha.adams@usdoj.gov

VOLUNTARY STATEMENT FORM
MONTGOMERY POLICE DEPARTMENT

/: Det.              BUREAU:   Rob/Hom            DATE: 6/22/07

NAME: Annette Nichols                             AGE: ▮   SEX/RACE: ▮
ADDRESS: ▮▮▮▮▮▮▮▮▮▮                               PHONE: ▮▮▮▮▮

CONCERNING:  Bank Robbery at 3480 Eastern Boulevard, Compass Bank

LOCATION OF INTERVIEW PAB: YES NO (SPECIFY): Compass Bank

STATEMENT TAKEN BY:   Detective D. R. Hill, #1297

Beginning time 1118  Hours.

Q:  Ma'am, can you state your name for me please.
A:  Annette Nichols.

Q:  Ms. Nichols, you're employed here at Compass Bank located at 3480 Eastern Boulevard, is that correct?
A:  That is correct.

O:  Okay and on today's date at around 10:17, no just after 10 o'clock, a robbery occurred, is that correct?
.   That is correct.

Q:  Okay and you were actually behind the counter working as the...
A:  Teller.

Q:  ...teller.
A:  I was the teller behind the counter.

Q:  Okay and in your own words ma'am, I need you to explain to me what you observed?
A:  I was waiting on a customer and as soon as the customer left, this black guy came up, handed me a note saying robbery, this is a robbery. Told me to open the drawers now. I had the drawers locked, I unlocked them, I opened them, I pulled the top drawer out and he, he put his body on the counter and reached over and took all the strap money out. Then he told me to open the other drawers, so I opened the vault. He reached, he bent over the counter and grabbed the money that was strapped and asked me for more. I didn't have any more, I told him I didn't have any more, so I pulled out the coins. I said this is all I have the coins and he left then.

Q:  Okay, so there was a customer just before him?
.   It was an employee, Daniel Robinson.

Q:  Daniel Robinson, he was standing up there.
cp/D4091

                              Page 1 of 4



A: He was paying a payment.

Q: Okay, Daniel was?
A: Yes.

Q: And he came walking up behind him?
A: He was behind Daniel when Daniel was paying the payment.

Q: Okay I know it's a little hard to remember now as you're shook up from this robbery, but to the best of your knowledge, I need you to describe this guy from head to toe. Did he have a hat on?
A: He had a baseball cap on, he had a white, kind of rag type underneath the baseball cap.

Q: Okay.
A: He had a....

Q: Facial hair?
A: I don't think he had any facial hair that I can remember.

Q: Okay.
A: He had a burn mark on the left side of his neck with a Band-Aid on it, he had on a black tee shirt, he had black blue jeans and the black tee shirt if I can remember correctly had a little white something writing on it, I didn't see exactly what it was.

Q: Okay, alright, so he, he walked up to you after an employee here, you know made his payment. At that time he places a note or he gives you a note.
A: He handed me the note saying this is a robbery.

Q: Okay.
A: And then he just told me to open the drawers. He pushed, you know he pushed his body on the counter and kind of leaned over.

Q: Okay and so how much money, when he leaned over, he got the money...
A: He only got scrap money.

Q: He only got the strap money.
A: And that's the ones that are all strapped up. He didn't grab the loose twenties or tens or fives or anything like that.

Q: Okay.
A: He didn't get any coins or anything.

Q: So those numbers are recorded, the serial numbers?
A: The serial numbers are recorded for my bate money that was in the bottom and in the top.

Q: Okay, that's the money that he did get?
A: He got that along with the other on the end.

Q: Okay, did he put the money in anything?

cp/D4091

A: He put the money in a tube, he had two white tube socks, he pulled them out of his pocket and when he leaned over the counter, he was putting the money in the tube sock.

Q: Okay, before he came up to you, did you see him when he walked through, did you see him get out of a car or anything?
A: No, I didn't. Earlier that morning I saw him about 8:45 somewhere around there and he came up to the door and he read the door where we didn't open until 9 o'clock.

Q: Same guy?
A: Same guy and he walked off. One of the other ladies that was coming up at the time, she asked me did he come in and I said well he looked at the door, she saw him walk up and we were trying to figure out why he didn't come in or you know why he didn't say anything. He just walked away, he walked through the bushes.

Q: So this is about 8:40 this morning?
A: 8:45 somewhere around there because she was just coming into work.

Q: Who was that?
A: Patti Franco.

Q: Okay, did anybody see him get into a car and leave that you know of?
A: Not that, unless Patti Franco saw him get into a car.

Q: Alright, is there anything else that I've left out?
A: He, he said he had a weapon, but he never pulled it out, but I didn't question him about that.

Q: Alright, now you, pretty much calculated how much money was taken, is that correct?
A: Right we're gonna count the money in just a few minutes when Mona gets here, that should be, it should be around $4,970 is what he got from what I could tell, unless he grabbed some money that I didn't see him grab.

Q: Now this guy, he, have you ever seen him before?
A: Not to my knowledge, no.

Q: Okay.
A: I don't think so.

Q: Did he have a loud voice?
A: He was kind of quiet.

Q: Right.
A: And he was nervous.

Q: He was nervous, he was shaken.
A: And he didn't, he was a little nervous, so I wasn't, he made me nervous because he was nervous.

cp/D4091

Page 3 of 4

Q: Absolutely.
A: And when I saw him, you know when I saw him go over the counter, one of our employees, Donna Cooper, she was walking up the steps and I talked real loud about you want me to give you all my money so that she would know a signal and she saw me and she started calling 911 then.

Q: That was Donna Cooper?
A: Uh-huh, she saw, she knew what was going on. She knew there was a robbery going on.

Q: Okay.
A: And so she called the police as she was walking up, she had her cell phone and she called the police then.

Q: Okay.
A: And as soon as he walked out, I called 911.

Q: Alright, is there anything else that I left out that you'd like to add to this statement ma'am?
A: Nothing that I can think of.

Q: Okay, if we get him in custody, you believe you will be able to identify this guy?
A: I think, I mean you know I couldn't, but I think so.

Ending time 1124 Hours.


cp/D4091

_____   Page 4 of 4

MONTGOMERY POLICE DEPARTMENT
SUPPLEMENTARY OFFENSE REPORT

07-014041

| Victims Name as on Original Report (Last, First, Middle) | Date, Time of Offense: | Date, Time of Supplement: |
|---|---|---|
| Compass Bank | 06-22-07 @ 1015 | 06-27-07 @ 1010 hours |

| Has arrest been made: Yes or No | Date of Arrest: | Offense as Reported: |
|---|---|---|
|  |  | Robbery 1st degree |

| Has warrant/petition been signed: Y or N | Date Warrant/ Petition Signed: | Offense after investigation: |
|---|---|---|
|  |  | Robbery 1st degree |

**FOLLOW-UP INVESTIGATION:**

On Tuesday, 06-26-07 at approximately 2030 hours, the teller Annette Nichols was dining out at Hooter's located on the Eastern Boulevard. While she was eating she observed a B/M that was working as a cook, who resembled the description of the suspect that robbed her at the bank. After the subject looked at her a second time she contacted her boss who contacted Deputy Chief Thompson, of MPD. From this point forward several units were sent out to Hooter's to locate the suspect. Cpl. Seithalil and Cpl. Thompkins, responded to Hooter's and was able to detain the possible suspect who was identified as B/M, Edmond Teral Oliver, DOB: 05-08-1980, of 872 Rialto Drive. Edmond was then transported to the detective division for further investigation of this case. Upon his arrival at the detective division he was processed by detective gambrel. The process, consist of taking the subject's photograph and fingerprint's. Detective Gambrel after retrieving the fingerprints gave the cards to Lieutenant Kenny with the Crime Scene Bureau to be compared to the prints that were lifted from the scene of the bank robbery.

During this time this writer was off duty and was contacted by Sgt. Payson, who advised that a suspect was being detained for further investigation of this case. I advised him that I would come in to interview the suspect. Upon my arrival at headquarters this writer made contact with the suspect who was sitting in detective Gambrel's office. He was at that time escorted to the Audio/Video Room located in the Public Affairs building for further questioning. He was once again read his Constitutional Right's from a Montgomery Police Department standardized right's form. He waived


GOVERNMENT'S EXHIBIT 2

12908 (411)                                                              Page 2

his right's at 2250 hours and agreed to give a statement. The audio statement began at 2250 hours. During the statement he advised that he worked the night prior to the robbery until two or three o'clock the morning of the robbery. He went from work to his mother's residence where he made contact with his mother upon his arrival at home. He did not leave the residence until he returned to work that afternoon. His audio statement will go into greater detail in reference to the interview.

Photographic line-ups were developed and B/M, witness Daniel Robinson and Annette Nichols were contact and responded to view the photo-graphic line-ups. Neither of the two were able to identify the subject in question.

This writer was then contacted by Lieutenant Kenny with the Crime Scene Bureau who advised that the prints did not compare to the one's lifted from the scene.

Edmond was subsequently released from this point.

12908 (411)                                                                 Page 3

| Unfound           | Exc. Cleared | Investigator     |
|-------------------|--------------|------------------|
| Cleared by Arrest | Inactive     | D. R. Hill #1297 |

SMITH11

VOLUNTARY STATEMENT FORM
MONTGOMERY POLICE DEPARTMENT

IV: Detective     BUREAU: Robbery/Homicide     DATE: 7/2/07

NAME: Annette Nichols                          AGE:       SEX/RACE: 
ADDRESS:                                       PHONE:

CONCERNING:  3A of Compass Bank

LOCATION OF INTERVIEW PAB: YES NO (SPECIFY):  3060 Pelzer Avenue

STATEMENT TAKEN BY:  Detective D. R. Hill, #1297

Beginning time 1441 Hours.

Q:  Ma'am, can you state your name and address for me please?
A:  My name is Annette Nichols. My address is 3060 Pelzer Avenue, Montgomery, Alabama.

Q:  Okay. Ms. Nichols, through the course of this bank robbery investigation we have developed a possible suspect and I have in front of me a photographic lineup that I just showed to you a minute ago, and on that lineup did you identify any of the six pictures?
A:  I identified number 6.

Q:  Okay, and how sure are you that that's the suspect?
A:  99 percent.

Q:  Alright.
A:  I mean you know close to 100 cause that one I'd say 99 percent sure.

Q:  Okay. And did you sign and date that?
A:  I signed it and dated it today's date.

Q:  Okay. And today's date is 7/2/07.
A:  7/2/07.

Q:  And the bank robbery where you're working as a teller happened on 6/22/07, is that correct?
A:  That is correct.

Q:  Alright. Is there anything else you'd like to add to this statement?
A:  That's it.

Ending time 1442 Hours.

AC/D4241                          Page 1 of 1


GOVERNMENT'S EXHIBIT 3

**NWS Police Department Photo Line-up**








I have identified picture # 6 as the suspect on 6/22/07 (Date)

Signature: _Orette Nichols_

Case # 07-01404

10-2-07

GOVERNMENT'S EXHIBIT 4