IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | CR. NO.  2-07cr165-MHT |
| | ) | |
| ANDREAS JEJUAN SMITH | ) | |
| | ) | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This cause is before the Court on the *Motion to Suppress Suggestive Out of Court Identification* filed by Defendant Andreas Jejuan Smith ("Smith").  *See* Doc. 15, filed October 10, 2007.  The Court held a hearing on the motion on October 25, 2007. After considering all submissions and analysis of the relevant law, the Magistrate Judge recommends that the District Judge DENY the Motion to Suppress.

### I. FACTUAL BACKGROUND AND MOTION TO SEVER

On June 22, 2007 at approximately 10:17 a.m. a lone black man entered the Compass Bank at 3480 Eastern Boulevard in Montgomery, Alabama and got in line at the teller station of Annette Nichols ("Nichols").  After Nichols waited on Daniel Robinson ("Robinson") – a customer and employee of the bank, – the lone black man handed Nichols a note which said, "this is a robbery."  The robber told Nichols to open her money drawers.  Nichols unlocked the money drawers and pulled the top drawer out.  The robber pulled two white tube socks out of his pocket, leaned over the counter, and began taking money from the drawer to put it into the tube socks.  At some point during the robbery, the robber told

Nichols he had a weapon, but he never displayed the weapon to her. After the robber emptied the drawer, he asked Nichols for more money. When Nichols told the robber she only had coins remaining, the robber fled from the bank. *See* Doc. 22, Exhibit 1. During the hearing Montgomery Police Detective D.R. Hill ("Detective Hill") testified Robinson gave a statement which corroborates Nichols' statement as well as describing the getaway vehicle as a 1999 or 2000 Chrysler Sebring with a yellow "Support Our Troops" bumper sticker.

Approximately an hour later, Nichols gave an audio recorded statement to Detective Hill. In substance, Nichols told Detective Hill about the robbery and described the robber as a black man wearing a baseball cap with a white rag underneath the cap. According to Nichols, the man had a quiet demeanor; a burn mark on the left side of his neck which was covered by a band aid; a black tee shirt; black blue jeans and the tee shirt perhaps had little white writing upon it. The evidence is somewhat contradictory regarding whether the robber had facial hair, as Nichols original statement implies little to no facial hair while testimony during the hearing revealed Nichols said the robber had some facial hair. Nichols told Hill she and another employee saw the robber approximately at 8:45 a.m. the morning of the robbery. Hill said the robber stood at the door momentarily reading the door sign which said the bank did not open until 9:00 a.m. The robber walked away and did not reenter again until the robbery. *See* Doc. 22, Exhibit 1.

On June 26, 2007, Nichols was eating at Hooters restaurant in Montgomery, Alabama when she saw a cook, Edmond Oliver ("Oliver"), in the restaurant who she though bore a resemblance to the man who robbed the bank. The police arrested, printed and questioned

Oliver; however, prints from Oliver did not match any of the prints lifted from the bank robber. Furthermore, neither Robinson nor Nichols identified Oliver as the robber from a photographic line up.

During the hearing, Detective Hill testified while he was on duty on July 2, 2007, he pulled over a 1999 Chrysler Sebring which bore a strong resemblance to the get away vehicle described by Robinson. It also had the yellow "Support Our Troops" bumper sticker. The driver identified himself as Glenn Teague ("Teague"), father of the defendant. Teague told the police his son also used the vehicle. Upon receiving this information, Detective Hill was able to pull police records on Smith. Detective Hill then identified Smith as a suspect in the robberies from the police and surveillance photos.

Later on July 2, 2007, after further investigation, Detective Hill presented another photographic lineup to Nichols and Robinson. Nichols immediately identified Defendant Smith as the man who robbed her bank ten days earlier. Nichols picked Smith's photograph from a lineup consisting of 6 black men. *See* Doc. 22, Exhibit 4. Smith rated her identification as 99% certain. *See* Doc. 22, Exhibit 3. Robinson also identified Smith as the robber and stated on a scale of one to ten his certainty would be a seven.

Smith alleges the lineup was suggestive, the product of police coaching and fashioned in a manner to assure Smith was identified by Nichols as the bank robber.

## II. ANALYSIS

If a court determines a photographic lineup is not unduly suggestive, the photographic lineup is entitled to admission at trial like any other piece of evidence and due whatever

weight the fact finder assigns. *See United States v. Diaz*, 248 F.3d 1065, 1102 (11th Cir. 2001). The Court uses a two-step analysis to determine the admissibility of an out-of-court identification. *Id*. (citing *Cikora v. Dugger*, 840 F.2d 893, 895 (11th Cir. 1988)). The court must determine whether the identification procedure was unduly suggestive and the whether under the, under the totality of the circumstances, the identification was nonetheless reliable. *Id*.

Aside from mere allegations by Smith and the presence of a photograph of Smith in the photographic lineup, the Court finds nothing in the photographic lineup which in any manner suggests to Nichols or anyone else to identify Smith as the bank robber. Under the circumstances, it is doubtful whether a hearing was necessary to resolve the issue at bar. *See United States v. Brown*, 441 F.3d 1330, 1350 (11th Cir. 2006) (citations omitted) ("The Constitution does not impose a *per se* rule requiring an evidentiary hearing in every case); *United States v. Smith*, 546 F.2d 1275, 1279-80 (5th Cir. 1977) (citations omitted) ("An evidentiary hearing is not required where none of the critical facts are in dispute and the facts as alleged by the defendant if true would not justify the relief requested.")[1]; *United States v. Hadden*, 2007 WL 1135523 *2 (S.D. Ga. 2007) (citing *Brown* and *Smith*). In the context of the facts at hand, the eyewitness identification is such a key ingredient in the prosecution case as to compel early judicial scrutiny to determine whether the photographic lineup was

---

[1]    *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

unduly suggestive or otherwise unreliable.

Having found the lineup was not unduly suggestive, the Court reviews the reliability of the photographic identification. Reliability hinges on the totality of the circumstances and the balance of five factors which are (1) the witness' opportunity to view the defendant at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' description of the defendant prior to the identification; (4) the witness' level of certainty when identifying the defendant at the identification; and (5) the length of time elapsed between the crime and the identification. *Neil v. Biggers*, 409 U.S. 188, 199-200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972); *Diaz*, 248 F.3d at 1102. The court may also consider the strength of the other evidence against the defendant in the case. *See, e.g., United States v. Tisdale*, 817 F.2d 1552, 1554 (11th Cir. 1987) (The court concluded that the evidence and other testimony was consistent.).

The court finds the identification reliable enough for the fact finder to consider. First, the facts indicate Nichols had an excellent opportunity to view the robber during the crime. The robber was directly in front of Nichols during the robbery and leaned over into her teller station. The robber had no mask or disguise and the bank was well lit the morning of the robbery. Next, Nichols obviously paid a great deal of attention to the robber. Her description minutes after the robbery includes the burn upon the neck of the robber which was covered by a band-aid. In addition, the attention Nichols paid to the robber is reflected in the accuracy of her description of Smith prior to her selection of Smith in the photographic lineup. In other words, Smith fits the description Nichols gave to Detective Hill immediately

after the robbery.

Intertwined with the attention Nichols paid to the robber and the accuracy of her description is the level of certainty Nichols gave her identification of Smith in the photographic line up. In her own words, Nichols assigned a 99% certainty to her identification of Smith. Furthermore, only ten days elapsed between the robbery and Nichols selecting Smith from the lineup. It is patently unlikely the passage of time substantially diminished the accuracy of Nichols' identification. She also had no hesitation in picking out Smith from the photo array. According to testimony by Detective Hill, she immediately identified Smith as the robber.

In addition, Robinson also identified Smith in the photographic lineup. Robinson had a good opportunity to observe the robber and saw the get away car. Robinson viewed the lineup separately from Nichols and with a good deal of certainty also identified the defendant. Moreover, according to testimony by Detective Hill, Teague, defendant's father, also made some kind of identification of Smith when he looked at the photos from the robbery. Finally, Smith drives a substantially similar vehicle to the vehicle identified as the get away car.

The Court is mindful that Smith argues Nichols misidentified someone else as the robber, yet the court finds the photographic lineup without taint. The facts before the Court indicate Nichols said the cook, Oliver, bore a strong resemblance to the robber, but Nichols never positively identified Oliver as the robber even when she saw a a photographic array which had a picture of him. Certainly, Smith may be able to present the lineup with Oliver

and attendant facts to the fact finder, and argue the jury should discount her selection of Smith from the photographic lineup. For purposes of analysis the Court need not find nor does it express a view on the ultimate issue of whether Smith indeed robbed the bank. The court merely finds that the photographic lineup meets the threshold standard of reliability for the jury to consider whether the photographic lineup alone or in conjunction with other facts is proof beyond a reasonable doubt as to the guilt or innocence of Smith.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the *Motion to Suppress Suggestive Out of Court Identification* (Doc. 15, October 10, 2007) be DENIED.

It is further ORDERED that the parties are DIRECTED to file any objections to the said Recommendation not later than **November 13, 2007**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of*

*Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 26th day of October, 2007.

TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE