**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** ) | | |
| | ) | |
| | ) | |
| **V.** | ) | **CR. No: 2:07cr165-MHT** |
| | ) | |
| **ANDREAS JEJUAN SMITH** | ) | |

### DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE MOTION TO EXCLUDE EVIDENCE AND TESTIMONY

**COMES NOW** the Defendant, ANDREAS JEJUAN SMITH, by and through undersigned counsel, Kevin L. Butler, and, pursuant to Federal Rule of Criminal Procedure 16(d)(2), this Court's Standing Order on Criminal Discovery and Brady v. Maryland, 373 U.S. 83 (1963), moves this Court for an order dismissing the indictment for failure to comply with discovery obligations. In the alternative, Mr. Smith moves to exclude: 1) the testimony of Glenn Teague; 2) any evidence flowing from Mr. Teague's statements (including but not limited to a subsequent photo identification of the defendant by Annette Nichols); and 3) all evidence and statements related to the shooting at 2861 Jan Drive, Montgomery, AL, on July 20, 2007.

Mr. Smith asserts that the government's untimely and last-minute production of discoverable information, as well as its willful and continued failure to produce Brady information, is in flagrant violation of this court's Standing Order on Criminal Discovery and Fed. R. Crim. P. 16, has unfairly prejudiced Mr. Smith's right to a fair trial, and warrants

dismissal of the case or counts (or in the alternative exclusion of evidence).[1]

## Relevant Facts and Procedural History

On June 22, 2007, the Compass Bank located at 3408 Compass Drive, Montgomery, AL, was robbed. Multiple witnesses indicated that the robbery suspect used a late model Chrysler Sebring (suspect vehicle) as the getaway vehicle. Shortly after the victim teller misidentified a possibly innocent man as the robber (leading to this person's arrest and detention), law enforcement stopped what it believed to be the suspect vehicle. The vehicle was driven by Glenn Teague. Amongst other prior felony convictions, Mr. Teague has four (4) prior convictions for robbery and two (2) prior convictions for perjury. During police questioning and after being shown photographs from the bank robbery, Mr. Teague identified his son, Andreas Smith as the bank robber. As a result of Mr. Teague's identification, Andreas Smith's photograph was presented to the victim teller who then identifies Mr. Smith as the bank robber.[2]

On July 20, 2007, local law enforcement and the United States Marshals executed an arrest warrant for Mr. Smith at 2861 Jan Drive, Montgomery, AL (the residence). During the arrest two shots were fired from within the residence in the direction of the arresting officers who were standing by the front door. After entering the residence, law enforcement

---

[1]     Undersigned counsel has reason to believe that law enforcement officials have withheld the information from the prosecutor assigned to this case. Nevertheless, their misconduct is attributable to the individual prosecutor. See Kyles v. Whitley, 514 U.S. 419 (1995).

[2]     Mr. Teague's photograph was never presented to the victim teller even though he and his son look very similar.

detain the residence's three (3) occupants: Mr. Smith, Willie James Jackson (the apparent property owner), and Mr. Garland Jamaal Clark (an apparent guest at the residence). Located within the residence and in close proximity to all the occupants were several pounds of marijuana, two assault weapons and a pistol. Mr. Jackson, the apparent property owner, admits the assault weapons and narcotics are his.

On August 15, 2007, Mr. Smith was charged in this court with bank robbery, assaulting the law enforcement officers, being a felon in possession of a firearm and possession of a firearm in furtherance of a felony. On August 28, 2007, Mr. Smith entered a plea of not guilty, and undersigned counsel's office was appointed.[3] Pursuant to the order on arraignment, this Court ordered all discovery to be provided on August 28, 2007. In compliance with that order, the government provided the defense with 395 pages of discovery and 4 CD's. No discovery issues were raised at the October 11, 2007 pretrial conference as undersigned counsel believed all discoverable materials had been provided by the government. Trial in this matter was subsequently scheduled for December 10, 2007, in order to allow counsel time to prepare.[4]

On November 19, 2007, over 2 months after the discovery deadline, the government provided the defense with late discovery. Though untimely, no Court action was sought in light of the fact that the information (though untimely) was provided the defense during a

---

[3]     Undersigned counsel formally noticed his appearance on September 4, 2007.

[4]     Undersigned counsel was unavailable between October 16, 2007 through October 31, 2007, to attend the birth of his daughter and assist his wife with child care.

3

suppression hearing. One week prior to trial, December 3, 2007, the government untimely provided the defense with a copy of the defendant's statement that had been in their possession since August 8, 2007 (20 days prior to the discovery deadline). Three days before trial, on December 6, 2007, the government provided the defense with 1) <u>Brady</u> information related to Mr. Teague that had been in their possession since July 4, 2007 [almost two months prior to the discovery deadline] and 2) a audiotape statement of Mr. Smith that had been in their possession since July 25, 2007. Additionally, the government informed the defense that ballistic reports from the scene of the shooting would not be complete until the Spring of 2008.

### Argument

Pursuant to the Standing Order on Criminal Discovery, on or before August 28, 2007, the government was to provide the defense with "[a]ll discoverable information within the scope of Rule 16(a) of the Federal Rules of Criminal Procedure" and <u>Brady</u> material. <u>See</u> Standing Order at p. 1. "The identification and production of all discoverable evidence or information is the personal responsibility of the Assistant United States Attorney assigned to the case and may not be delegated without the express permission of the court." <u>Id.</u> at 2.

Additionally, pursuant to Fed. R. Crim. P. 16(a)(1)(C), "[T]he government shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs **tangible objects**, buildings or places, ... which are within the possession, custody or control of the government, and **which are material to the preparation of the defendant's defense** or are intended for use by the government as evidence in chief at the

4

trial or were obtained from or belong to the defendant." [emphasis added]. Furthermore, pursuant to Fed. R. Crim. P. 16(F) and the Standing Order on Criminal Discovery, "[T]he **government must permit a defendant to inspect and copy** ... the result or **reports of any physical or mental examination and of any scientific test or experiment**" if they have knowledge it is in their control and it is **material to preparing the defense**. [emphasis added].

Regardless of whether the failure to disclose was in good faith, it is a violation of Due Process for a prosecutor not to provide a defendant with all evidence in the government's possession materially favorable to the defendant's defense. See Brady v. Maryland, 373 U.S. 83 (1963). This information may be exculpatory or impeachment evidence. See Breedlove v. Moore, 279 F.3d 952 (11th Cir. 2002). Additionally, information known to the police is attributable to the prosecutor, and the withholding of Brady information by a government agent (regardless of good faith) is also a violation of Due Process. Kyles v. Whitley, 514 U.S. 419 (1995).

Undersigned counsel has been able to address and investigate the information that was untimely provided on November 19, 2007 and does not anticipate any prejudice from its untimely production. Additionally, there does not appear to be any inculpatory information in Mr. Smith's untimely provided statements. However, other matters that have been untimely produced or **simply will not be produced** are extremely prejudicial to the defense and when viewed in connection with the pattern the other untimely produced materials warrants sanction.

In order to address the prejudice the government's discovery violations are having on the defense, the defendant must reveal its theory of defense. As to the bank robbery, it is the defendant's theory that Mr. Teague (or someone else) committed the offense. Mr. Teague has been incarcerated much of his son Andreas' life. Andreas did not know him until Andreas was in his 20s. Throughout his son's life, Mr. Teague has demonstrated no care or concern for his child and Mr. Teague has been completely absent (emotionally and physically). Mr. Teague's criminal history clearly shows his selfishness, propensity to commit robbery and demonstrates that he will lie (i.e. commit perjury) to protect his own interests. In order to adequately cross-examine Mr. Teague, undersigned counsel is presently "scrambling" to obtain the court records, and other relevant documents, corresponding to Mr. Teague's criminal history that was provided on December 6, 2007. Presently, undersigned counsel cannot state with any certainty that it will have this information prior to trial. The government should not be allowed to reap the benefit of its discovery violation while leaving the defense prejudiced.

As to the firearm offenses, it is the defendant's theory of the defense that Mr. Smith did not possess or discharge any firearms at the time of his arrest and that he was in a location in the residence from which the gun shots could not have been produced. Ballistic reports would show that the firearm(s) could not have been fired from Mr. Smith's location within the residence at the time of his arrest, the gunshots could only have come from the location of the two other occupants and one (or both) of the other occupants fired the weapon(s). Because of the government's refusal to produce this <u>Brady</u> information prior

6

to trial and not until Spring of 2008, the defendant is irreparably prejudiced and precluded from presenting his case/defense and having a fair trial. Again, the government should not be allowed to reap the benefit of its discovery violations while leaving the defense prejudiced.

Federal Rule of Criminal Procedure 16(d) addresses the issue of a party's failure to comply with a discovery obligations. The Rule states in pertinent part that, if "it is brought to the attention of the court that a party has failed to comply with this rule, the court may ... prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances." Fed. R. Crim. P. 16(d)(2). The court sanction, in certain circumstances, may take the form of an Order of Dismissal. United States v. White, 846 F.2d 678 (11th Cir. 1998). Furthermore, the district court's decision concerning the imposition of a Rule 16(d)(2) sanction is a matter committed to the court's sound discretion, and will not be disturbed on appeal absent an abuse of discretion. United States v. Fernandez, 780 F.2d 1573, 1576 (11th Cir. 1986).

In formulating the appropriate sanction for discovery violations, the court must consider: (1) the circumstances surrounding the discovery violation, (2) whether the government was acting in good faith, (3) the prejudice suffered by the defendant, and (4) the feasibility of curing the prejudice through some form of sanction. United States v. Turner, 871 F.2d 1574, 1580 (11th Cir. 1989). After reviewing these factors the court may order dismissal of the indictment if it deems the circumstance warrants it. United States v. White, 846 F.2d 678, 693 (11th Cir.1998).

7

It is the defense's position that dismissal of the case (or counts) is warranted. The defense is attempting, but may not be able, to obtain necessary information regarding Mr. Teague prior to the presently scheduled trial. Providing this critical impeachment/<u>Brady</u> information at the last minute (2 business days before trial) and limiting the defendant's ability to adequately prepare calls for this severe sanction. In the alternative, any evidence stemming from Mr. Teague should be excluded. Therefore, his testimony and his identification should be excluded. Additionally, his statements to law enforcement led to a subsequent identification of Mr. Smith by the victim teller through a photo line-up. Therefore, this I.D. must also be excluded. (i.e., but for Mr. Teague's I.D. and statement, the line-up would never have been shown to the victim teller).[5]

However, the most compelling reason for dismissal of the case and at a minimum dismissal of Counts 2-4, is the government's continued position that it simply will not make the ballistic reports available prior to trial. If the government could not timely obtain this discoverable information, the charges should not have been filed. This blatant contempt for the Federal Rules of Criminal Procedure and this Court's Standing Order on discovery warrants dismissal of the case. Without the ballistic reports there is no way Mr. Smith will be able to adequately defend himself. In the alternative, any evidence related to the discharge of a firearm must be excluded.

Undersigned counsel does not believe that the prosecutor assigned this case has

---

[5] If this evidence is excluded, the defense will not be calling an expert on cross-racial identification. <u>See</u> Docket #55.

attempted to delay the production of the ballistic reports or the <u>Brady</u> information regarding Mr. Teague.    However, contemptuous actions of her agents are attributable to her prosecution and the remedy is case dismissal.  In the alternative, evidence must be excluded.

**WHEREFORE**, the Defendant prays that this Court dismiss the indictment or, in the alternative, suppress Mr. Teague's statements and all evidence derived from it, and 2) all evidence regarding the discharge of a firearm at  2861 Jan Drive, Montgomery, AL.

Respectfully submitted this 6th day of December,

s/ Kevin L. Butler
**KEVIN L. BUTLER**
First Assistant Federal Defender
201 Monroe Street, Suite 407
Montgomery, Alabama 36104
Phone: (334) 834-2099
Fax: (334) 834-0353
E-mail: kevin_butler@fd.org
AZ Bar Code: 014138

**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** ) | | |
| ) | | |
| ) | | |
| **V.** ) | | **CR. No: 2:07cr165-MHT** |
| ) | | |
| **ANDREAS JEJUAN SMITH** ) | | |

_____

**CERTIFICATE OF SERVICE**

     I hereby certify that on December 6, 2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Jerusha Adams, Esquire
Assistant United States Attorney
131 Clayton Street
Montgomery, Alabama 36104

                    Respectfully submitted,

                    s/ Kevin L. Butler
                    **KEVIN L. BUTLER**
                    First Assistant Federal Defender
                    201 Monroe Street, Suite 407
                    Montgomery, Alabama 36104
                    Phone: (334) 834-2099
                    Fax: (334) 834-0353
                    E-mail: kevin_butler@fd.org
                    AZ Bar Code: 014138