IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 2:07-cr-165-MHT |
| | ) | |
| ANDREAS JEJUAN SMITH | ) | |

UNITED STATES' RESPONSE TO MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO EXCLUDE EVIDENCE AND TESTIMONY

Comes now the United States of America, by and through Leura G. Canary, United States Attorney for the Middle District of Alabama, and files the instant Response to Defendant Andreas Jejuan Smith's Motion to Dismiss Or In the Alternative Motion to Exclude Evidence and Testimony. (Doc. # 58.) For the reasons set forth below, the United States submits that the motion be denied.

**I. RELEVANT BACKGROUND**

On June 22, 2007, around 10:17 a.m., the Compass Bank located at 3480 Eastern Boulevard ("Bank") was robbed. According to Annette Nichols, the victim teller involved in the robbery, a lone African-American male entered the Bank, waited for her to become available,[1] and then handed her a note which stated: "This is a robbery." The robber then ordered the victim teller to open the money drawers. The victim teller unlocked the money drawers and pulled the top drawer out. The robber then pulled two white tube socks out of his pocket. Thereafter, he leaned over the counter and began to take currency out of the drawer placing it into the tube socks. The robber then asked for more money. The victim teller advised the robber that she did not have any more money, only coins, and the robber then fled the Bank. At some point during this event, the robber informed the victim teller

---

[1] She was servicing another bank employee, Daniel Robinson, immediately before the robbery occurred.

that he had a weapon but he never displayed the weapon to the victim teller.

The victim teller provided law enforcement with a description of the robber. She described the robber as a black male, in his 20's, weighing 150 to 160 pounds, and being 5'7" to 5'8" in height. She also stated, *inter alia*, that the robber was wearing a baseball cap with a white rag underneath, a black t-shirt, and black colored jeans. She further asserted that the robber had a burn mark on the left side of his neck which had a bandage covering it. The victim teller also stated that she had observed the robber at the front door prior to the Bank's opening. She asserted that around 8:45 a.m., the robber came up to the front door of the Bank, read on the Bank door that it did not open until 9:00 a.m., and then departed. When asked if she could identify the robber, the victim teller responded that she "think[s] so."

Daniel Robinson, the bank employee who was serviced by the victim teller immediately prior to the robbery, also provided law enforcement with a description of the robber and suspect vehicle. Robinson described the robber as a young, slender black male, weighing 140 to 150 pounds, and being 5'11" to 6'0" in height. Robinson stated that he observed the black male exit the passenger side of a black Chrysler Sebring, late model vehicle. Robinson further stated that after the suspect exited the vehicle and began walking towards the front door of the Bank, the Chrysler Sebring departed. Robinson asserted that the suspect then entered the Bank and stood behind Robinson to await service from the victim teller. Robinson then walked away from teller window and began to return to his office. As Robinson was walking away, he heard the victim teller and suspect arguing and suspected that she was being robbed. Robinson then called the teller's supervisor and advised her of his suspicions. After talking to the teller's supervisor, Robinson then began walking towards the teller line and, while doing so, observed the suspect run out of the bank. Robinson described the suspect's

attire to law enforcement and provided a physical description of the suspect.

Four days later, on June 26, 2007, the victim teller was dining at Hooter's located on the Eastern Boulevard when she observed an African-American male who resembled the robber. The male was working as a cook. After the cook looked at her a second time, the victim teller contacted her boss who, in turn, contacted law enforcement. Law enforcement arrived on the scene and detained the cook, Edmond T. Oliver. A photographic array was developed which included Oliver. The victim teller was presented with the photo array and did not identify Oliver as the robber. Robinson, the second bank employee, was also presented with the same photo array and he did not identify Oliver as the robber.

On June 29, 2007, one week after the bank robbery, law enforcement observed a black Chrysler Sebring, being driving by a single, slim black male, in the immediate area of the robbery location. Due to the vehicle's similarity with the suspect robbery vehicle, law enforcement stopped the vehicle for further investigation. The driver was identified as Glenn Teague. Teague, who is close to 50 years old, stated that he had a son, named Andrew Smith, and that his son frequently operates the vehicle. Law enforcement later determined that Teague is the father of the defendant.

On July 2, 2007, law enforcement reviewed the criminal history of both Teague and the defendant. As Defendant accurately stated in his motion to dismiss, Teague has an extensive criminal history involving bank robbery and perjury. Law enforcement then compared a recent picture of the defendant to a still shot photo retrieved from the Bank. Law enforcement believed the two persons appeared to be similar thus it prepared a photo array containing a photo of the defendant. This photo array was comprised of six African-American men, including the defendant. On that same day, Robinson was presented with the photo array. He identified the defendant as the bank

robber with 70% certainty. Shortly thereafter, on the same day, the victim teller was presented with the same photo array. She identified the defendant as the bank robber with 99% certainty. Based upon these identifications and Teague's vehicle matching the suspect vehicle, at 3:58 p.m. on July 2, 2007, law enforcement obtained a state arrest warrant for the defendant for robbery in the first degree.

On the following day, July 3, 2007, law enforcement was informed by Teague's state probation officer that Teague was present at the probation officer's office. Law enforcement then met Teague at the probation officer's office and presented some of the still shots from the bank robbery to Teague. At that time, Teague identified his son as the robber.[2]

On July 20, 2007, the United States Marshals Service Gulf Coast Regional Fugitive Task Force arrested the defendant on the state arrest warrant. During the arrest, shots were fired at the Deputy Marshals. Three individuals were present when the arrest occurred: Willie Jackson, Garland Clark, and the defendant. According to the reports from the Deputy Marshals and interviews of Willie Jackson and Garland Clark, the defendant was the shooter.

Defendant is charged in a four-count indictment with robbing a bank, shooting at federal officers, using a firearm in furtherance of a crime of violence, and possessing a firearm after having been previously convicted of a felony. Count One of the Indictment alleges that Defendant, on June 22, 2007, "knowingly and willlfully [took] by force and violence and intimidation . . . money, belonging to and in the care, custody, control, management, and possession of Compass Bank

---

[2] Contrary to defense counsel's assertions, Teague's identification of his son as the suspect in the still bank robbery photos occurred after the bank employees identified his son as the robber in a photo array. Hence, Teague's identification had no effect on the identifications made by the bank employees or the state arrest warrant.

located at 3408 Eastern Boulevard, Montgomery, Alabama, . . . in violation of Title 18, United States Code, Section 2113(a)." (Doc. # 3.) Count Two of the Indictment alleges that Defendant, on July 20, 2007, "knowingly and by means and use of a deadly or dangerous weapon," forcibly assaulted "Deputies of the United States Marshals Service, while they were engaged in and on account of the performance of their official duties, in violation of Title 18, United States Code, Section 111(b)." (*Id*.) Count Three of the Indictment alleges that, on that same date in July 2007, Defendant "knowingly used and carried a firearm during and in relation to and possessed a firearm in furtherance of, a crime of violence for which he may be prosecuted in a court of the United States, to-wit: forcibly assaulting a federal officer with use of a deadly weapon as charged in Count 2 . . . in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii)." (*Id*.) Finally, Count Four of the Indictment alleges that Defendant, on July 20, 2007, after having been previously convicted twice for the felony of receiving stolen property, "knowingly and willfully possess[ed] a firearm, in and affecting commerce, that is a loaded Smith & Wesson, .40 caliber semi-automatic handgun . . . in violation of Title 18, United States Code, Section 922(g)(1)." (*Id*.)

## II.  ARGUMENT

**All Discoverable Information Was Timely Disclosed and Made Available to Defendant Thus Neither Dismissal Nor Exclusion is Warranted.**

Defendant contends that the Government willfully withheld discoverable information and belatedly disclosed discoverable information in violation of Rule 16 of the Federal Rules of Criminal Procedure and this Court's Order on Arraignment. The United States asserts that this contention is wholly without merit as the United States timely provided discovery to the defendant at the time of arraignment on August 28, 2007.

On August 28, 2007, the defendant appeared in open court in person and was arraigned. The United States provided discovery to the defendant at that time including 398 pages of material and 3 CD-R compact discs, and a written letter, dated August 28, 2007, detailing the discovery provided. (Ex. 1.) The letter advised Defendant that:

> Physical evidence, if any, is in the custody of the investigating law enforcement agency, the Alabama Department of Forensic Sciences, or any other agency who may be conducting examinations or test of such physical evidence. Arrangements to inspect physical evidence collected during the investigation may be made by contacting the undersigned Assistant United States Attorney.

(*Id*.) On August 29, 2007, the Court issued an Order on Arraignment. (Doc. # 11.) In said Order, the Court directed that, *inter alia*, "[u]nless the government provided initial disclosures to the defendant prior to or at arraignment, the government is **ORDERED** to tender initial disclosures on or before **8/28/07**." Hence, the United States' submission of initial disclosures at the arraignment hearing was in full compliance with the Order on Arraignment.

The undersigned did not receive any requests from defense counsel for any additional discovery or inspection of physical evidence until the day of the suppression hearing. On October 25, 2007, Magistrate Judge Terry Moorer held a hearing on Defendant's Motion to Suppress Suggestive Out of Court Identification (Doc. # 15), and Defendant's Motion to Sever Counts (Doc. # 16). Defense counsel requested copies of audio-tapes, another copy of the photo array containing Oliver,[3] a color copy of a facial composite of the bank robber created by the victim teller, and a report from a police officer. The information defense counsel requested was referred to and discussed in the United States' initial disclosures. Indeed, the contents of the requested audio-tapes

---

[3] One copy was provided to defense counsel at the suppression hearing but he submitted it to the Court as evidence.

had been provided to defense counsel in transcription form as "SMITH132" through "SMITH135," "SMITH138" through "SMITH143," and "SMITH146" through "SMITH148." In addition, a black and white copy of the facial composite had been provided to defense counsel as "SMITH168." The requested police report does not exist.  Notwithstanding, pursuant to Fed. R. Crim. P. 16(c), and the Standing Order on Criminal Discovery, the undersigned obtained copies of the requested information and provided supplemental discovery to defense counsel. (Ex. 2.)

On the eve of trial, the undersigned received requests from defense counsel for additional discovery documents and to inspect physical evidence. Specifically, between December 3, 2007, and December 5, 2007, defense counsel requested Teague's criminal history, photographs of Teague's vehicle, an opportunity to inspect Teague's vehicle, copies of items seized from Teague's vehicle and the opportunity to inspect these items, and a copy of the ballistics report for the shooting.[4] The information and documents pertaining to these items had been provided to defense counsel in the initial discovery on August 28, 2007. Teague's criminal history was detailed in a report from law enforcement which had been provided to defense counsel in the initial disclosures as "SMITH123" through "SMITH125." A color copy of Teague's vehicle had been provided to defense counsel in the initial disclosures as "SMITH159" and the report noting that photographs of Teague's vehicle were taken had been provided to defense counsel in the initial disclosures as "SMITH123" through "SMITH125." That same report noted the items seized from Teague's vehicle and stated that the items were impounded with the Montgomery Police Department. Although the undersigned's August 28, 2007, discovery letter informed defense counsel of the location of physical evidence and

---

[4] No ballistics report has been completed. The firearms and ammunition evidence was submitted to ballistics in July 2007. Due to a backlog, the ballistics examination has yet to be completed and thus does not trigger any concerns under Brady v. Maryland, 373 U.S. 83 (1963).

urged defense counsel to contact the undersigned for inspection of such items, defense counsel did not request to perform such inspection until the eve of trial. Notwithstanding, pursuant to Fed. R. Crim. P. 16(c), and the Standing Order on Criminal Discovery, the undersigned obtained copies of the requested information and provided supplemental discovery to defense counsel. (Ex. 3.) Accompanying the discovery, the undersigned provided defense counsel with the name and cellular telephone number for the FBI agent assigned to this case so that inspection of the requested physical evidence and objects could be scheduled at defense counsel's convenience.

In addition, on December 3, 2007, the undersigned provided to defense counsel, a report from law enforcement regarding statements made by the defendant on August 9, 2007. (Ex. 4.) In compliance with pursuant to Fed. R. Crim. P. 16(c), and the Standing Order on Criminal Discovery, the substance of the defendant's statements had been previously provided to defense counsel in the initial disclosures as "SMITH163" through as "SMITH165." Said pages constitute the FBI report detailing an interview of defendant by an FBI agent and an officer from the Montgomery Police Department ("MPD"). The supplemental discovery is the MPD officer's report from the same interview.

In sum, the United States has provided defense counsel with all discoverable information which exists. The only delay that occurred in this case is the delayed requests from defense counsel pertaining to inspection of physical evidence and copies of specific objects and documents under Fed. R. Crim. P. 16(a)(1)(E) which varied in form – not content – from the matter provided in the United States' initial disclosures. As such, neither dismissal of the indictment nor exclusion of any evidence is warranted in this case.

Respectfully submitted this the 7th day of December, 2007.

                LEURA G. CANARY
                UNITED STATES ATTORNEY

                /s/ Jerusha T. Adams
                JERUSHA T. ADAMS
                Assistant United States Attorney
                Post Office Box 197
                Montgomery, Alabama 36101-0197
                334-223-7280 phone    334-223-7135   fax
                jerusha.adams@usdoj.gov

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO.  2:07-cr-165-MHT |
| | ) | |
| ANDREAS JEJUAN SMITH | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on December 7, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Kevin L. Butler.

Respectfully submitted,

LEURA G. CANARY
UNITED STATES ATTORNEY


/s/ Jerusha T. Adams
JERUSHA T. ADAMS
Assistant United States Attorney
Post Office Box 197
Montgomery, Alabama 36101-0197
334-223-7280 phone    334-223-7135   fax
jerusha.adams@usdoj.gov



# U.S. Department of Justice

*United States Attorney*
*Middle District of Alabama*

---

One Court Square, Suite 201
Post Office Box 197
Montgomery, Alabama 36101-0197

Telephone: 334/223-7280
Fax: 334/223-7560
Fin Lit Fax: 334/223-7201
Civil Fax 334/223-7418
Criminal Fax: 334/223-7135

August 28, 2007

Office of the Federal Defenders
CJA Attorney, or Retained Counsel

Re:   U.S. v. Andreas Jejuan Smith, 2:07-CR-165-MHT
      Discovery Letter #1

Dear Sir or Madam:

__X__ 1. Pursuant to Rule 16(a), Fed. R. Crim. P., the Standing Order on Criminal Discovery issued February 4, 1999, and as otherwise required by law (e.g., Brady v. Maryland, 373 U.S. 83, United States v. Giglio, 405 U.S. 150), the United States Attorney hereby provides all available discovery to you as Defendant's counsel of record. Physical evidence, if any, is in the custody of the investigating law enforcement agency, the Alabama Department of Forensic Sciences, or any other agency who may be conducting examinations or tests of such physical evidence. Arrangements to inspect physical evidence collected during the investigation may be made by contacting the undersigned Assistant United States Attorney.

__X__ 2. Enclosed is a copy of the discovery in this case. This material is page numbered sequentially from 1 to 398, including 3 CD-R compact discs. Any pages that have not been provided are either work product, or are prohibited from or not required to be disclosed according to federal law or court rules. The United States considers this discovery material to have been received in its entirety unless promptly notified in writing of any discrepancies.

__X__ 3. The United States intends to use at trial any and all prior convictions, crimes, wrongs or acts of Defendant for those uses permitted by Rules 404(b) and 609, Fed. R. Evid., and as otherwise allowed by law. The United States is presently aware of, and at this time intends to use, the following:

Any and all previous instances of illegal possession of firearms, violent crimes, use of firearms in furtherance of violent crimes, and bank robbery.

GOVERNMENT EXHIBIT
CASE NO. 07-165
EXHIBIT NO. 1

____ 4. The United States intends to elicit testimony at trial of a confidential informant. The record of prior convictions of this informant is enclosed and can be found at page(s) _____. Documentation regarding any cooperation agreements and/or other <u>Giglio</u> material is enclosed and is located at page(s) _____.

__X__ 5. Defendant was identified through a line-up, show-up, photo spread or similar procedure. The exact procedure used is documented at page(s) <u>123-125, 128, 136-137, 144-145</u> of the enclosed discovery.

____ 6. Certain vehicles, vessels, or aircraft were utilized in the commission of the offense with which Defendant has been charged. This vehicle is currently in the custody of the investigating law enforcement agency or other governmental authority. Arrangements to inspect these vehicles, vessels, or aircraft can be made through the undersigned Assistant United States Attorney.

__X__ 7. Latent prints belonging to Defendant were collected during the investigation of this case. Documents related to those prints are located at page(s) <u>27, 39-46, 61-68</u> of the enclosed discovery materials. The curriculum vitae of the expert the United States intends to call as a witness can be found at page <u>61.</u>

__X__ 8. The United States intends to call expert witness or witnesses at trial. The experts are <u>Theron T. Jackson</u> and <u>Ronald McCoy</u>. The corresponding curriculum vitae for these witnesses can be found, respectively, at pages <u>60 & 61</u> of the enclosed discovery material.

____ 9. Certain electronic surveillance was conducted against Defendant, who is or appears to be an "aggrieved person," in accordance with 18 U.S.C. § 2510(11). Information relating to this electronic surveillance can be found at page(s) _____ of the enclosed discovery materials.

Pursuant to Rules 16(b), (c), and (d), Fed. R. Crim. P., the Standing Order on Criminal Discovery issued February 4, 1999, and as otherwise provided by law, the United States hereby requests a copy of all discovery to which it is entitled.

Pursuant to Rules 16(e) and 12.1, Fed. R. Crim. P., and as otherwise provided by law, the United States hereby requests notice of any intent to use an alibi defense and the specific details surrounding the alibi defense. Pursuant to Rule 16(c), the United States requests this information be provided as soon as Defendant becomes aware of its existence, under the continuing duty to disclose this information. The specific time(s) and date(s) of the offense is/are listed in the discovery material provided.

**Please note, pursuant to USSG, § 3E1.1, Acceptance of Responsibility, your client's eligibility for a full three (3) point reduction will be compromised unless the United States is notified of intent to plead guilty <u>prior to the first pre-trial conference</u>. Notice of intent to plead guilty prior to the first pre-trial conference**

**permits the United States to "avoid preparing for trial and [permits] the government and the court to allocate their resources efficiently . . ." A defendant that notifies an early intent to plead guilty "ensures the certainty of his just punishment in a timely manner, thereby appropriately meriting an additional reduction."** See *Background*, USSG, § 3E1.1

Finally, the undersigned Assistant United States Attorney is aware of and intends to comply with the continuing duty to disclose discoverable information as required by Rule 16(c), Fed. R. Evid. and the Standing Order on Criminal Discovery issued February 4, 1999.

Please feel free to contact me at any time to discuss this case or if you have any questions about the discovery provided.

                                     Respectfully submitted,

                                     LEURA GARRETT CANARY
                                     United States Attorney

                                     *Jerusha J. Adams*
                                     Jerusha T. Adams
                                     Assistant United States Attorney

enclosure(s)

**U.S. Department of Justice**

*United States Attorney*
*Middle District of Alabama*

---

131 Clayton Street
Post Office Box 197
Montgomery, Alabama 36104-3429

Telephone: 334/223-7280
Fax: 334/223-7560
Fin Lit Fax: 334/223-7201
Civil Fax 334/223-7418
Criminal Fax: 334/223-7135

November 19, 2007

Kevin Butler, Esq.
Office of the Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 1960
Montgomery, AL 36104

Re:   U.S. v. Andreas Jejuan Smith, 2:07-CR-165-MHT
      Discovery Letter #2

Dear Mr. Butler:

Pursuant to Rule 16(a), Fed. R. Crim. P., the Standing Order on Criminal Discovery issued February 4, 1999, and as otherwise required by law (e.g., Brady v. Maryland, 373 U.S. 83, United States v. Giglio, 405 U.S. 150), the United States Attorney hereby provides supplemental discovery to you as Defendant's counsel of record. This material is page numbered sequentially from 399 to 401, including 1 CD-R. Any pages that have not been provided are either work product, or are prohibited from or not required to be disclosed according to federal law or court rules. The United States considers this discovery material to have been received in its entirety unless promptly notified in writing of any discrepancies.

Despite the representations made at the suppression hearing, Corporal Farmer did not complete a report on the day of the bank robbery. Notwithstanding, here is the other information that you requested.

Please feel free to contact me at any time to discuss this case or if you have any questions about the supplemental discovery provided.

Respectfully submitted,

LEURA GARRET CANARY
United States Attorney

By: *Jerusha J. Adams*
Jerusha T. Adams
Assistant United States Attorney

enclosure(s)

GOVERNMENT EXHIBIT
CASE NO. 07-165
EXHIBIT NO. 2



**U.S. Department of Justice**

*United States Attorney*
*Middle District of Alabama*

---

131 Clayton Street
Post Office Box 197
Montgomery, Alabama 36104-3429

Telephone: 334/223-7280
Fax: 334/223-7560
Fin Lit Fax: 334/223-7201
Civil Fax 334/223-7418
Criminal Fax: 334/223-7135

December 5, 2007

Kevin Butler, Esq.
Office of the Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 1960
Montgomery, AL 36104

Re:   U.S. v. Andreas Jejuan Smith, 2:07-CR-165-MHT
      Discovery Letter #5

Dear Mr. Butler:

In response to your December 5, 2007, request for ballistics report, I am writing to inform you that the ballistics report has yet to be completed. It is my understanding that the evidence has been submitted for analysis and the report will not be completed until the Spring of 2008.

In response to your December 4, 2007, request for additional information, I am providing you with copies of two CD-R discs which contain the MPD case files for the criminal offenses at issue. All of the requested information is located on these discs. Further, feel free to contact FBI Agent John Drew (799-6211) for inspection of the actual vehicle and impounded items. He is presently out of town, but will return on Friday.

Any pages that have not been provided are either work product, or are prohibited from or not required to be disclosed according to federal law or court rules. The United States considers this discovery material to have been received in its entirety unless promptly notified in writing of any discrepancies.

Please feel free to contact me at any time to discuss this case.

Respectfully submitted,

LEURA GARRET CANARY
United States Attorney

By: *Jerusha J. Adams*
Jerusha T. Adams
Assistant United States Attorney

enclosure(s)

GOVERNMENT
EXHIBIT
CASE NO. 07-165
EXHIBIT NO. 3



# U.S. Department of Justice

*United States Attorney*
*Middle District of Alabama*

---

131 Clayton Street
Post Office Box 197
Montgomery, Alabama 36104-3429

Telephone: 334/223-7280
Fax: 334/223-7560
Fin Lit Fax: 334/223-7201
Civil Fax 334/223-7418
Criminal Fax: 334/223-7135

December 3, 2007

Kevin Butler, Esq.
Office of the Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 1960
Montgomery, AL 36104

Re:  U.S. v. Andreas Jejuan Smith, 2:07-CR-165-MHT
     Discovery Letter #3

Dear Mr. Butler:

Pursuant to Rule 16(a), Fed. R. Crim. P., the Standing Order on Criminal Discovery issued February 4, 1999, and as otherwise required by law (e.g., Brady v. Maryland, 373 U.S. 83, United States v. Giglio, 405 U.S. 150), the United States Attorney hereby provides supplemental discovery to you as Defendant's counsel of record.  This material is a report from MPD Detective Hill regarding statements made by your client on August 9, 2007. Any pages that have not been provided are either work product, or are prohibited from or not required to be disclosed according to federal law or court rules.  The United States considers this discovery material to have been received in its entirety unless promptly notified in writing of any discrepancies.

Please feel free to contact me at any time to discuss this case or if you have any questions about the supplemental discovery provided.

Respectfully submitted,

LEURA GARRET CANARY
United States Attorney

By: *[signature]*
Jerusha T. Adams
Assistant United States Attorney

enclosure(s)

**GOVERNMENT EXHIBIT**
CASE NO. 07-165
EXHIBIT NO. 4