IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO.  2:07-cr-165-MHT |
| | ) | |
| ANDREAS JEJUAN SMITH | ) | |

UNITED STATES' MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY

Comes now the United States of America, by and through Leura G. Canary, United States Attorney for the Middle District of Alabama, and respectfully moves this Court to exclude the testimony of Defendant's expert, Dr. Solomon Fulero.  As grounds for this Motion, the United States avers as follows:

1.    On December 5, 2007, the United States received notification from Defense counsel that the defense intended "to call Dr. Sol Fulero as an expert on cross racial identification."  (Ex. 1.)  The notification further provided that "Dr. Fulero will testify that members of a given race have difficulty identifying members of other races."  (*Id.*)  Submitted as an attachment to this notification was Dr. Fulero's qualifications.  (*Id.*)

2.    On December 7, 2007, the Court issued an Order directing, *inter alia*, that the defendant prepare an adequate summary of his expert's testimony by no later than December 12, 2007.  (Doc. # 65.)

3.    In compliance with said Order, on December 11, 2007, the United States received notice from Defense counsel that the defense intended "to call Dr. Solomon Fulero as an expert on cross racial identification and eyewitness identification."  (Ex. 2.)  The notice provided a summary of Dr. Fulero's qualifications and his testimony.

(*Id.*)  The notice further provided that "Dr. Fulero will testify about generally accepted theories of memory and the factors that affect eyewitness reliability in the acquisition, retention, and retrieval stages of memory."  (*Id*. at 2.)

4.      The United States contends that Dr. Fulero's expert testimony on eyewitness identification should be excluded because such testimony fails to meet the requirements of Rule 702 of the Federal Rules of Evidence as interpreted by *Daubert v. Merrell Dow Pharmaceuticals*, *Inc.*, 509 U.S. 579, 592 (1993), and its progeny.

5.      Alternatively, the United States contends that the proposed expert testimony should be excluded because its probative value is substantially outweighed by the possible danger of misleading or confusing the jury, and unfair prejudice.  *See* Fed. R. Evid. 403.

WHEREFORE, the above premises considered, the United States respectfully requests that this Honorable Court enter an order excluding the testimony of Defendant's expert witness.

A memorandum of law in support of the motion is attached.

Respectfully submitted this the 10th day of March, 2008.

LEURA G. CANARY
UNITED STATES ATTORNEY


/s/ Jerusha T. Adams
JERUSHA T. ADAMS
Assistant United States Attorney
Post Office Box 197
Montgomery, Alabama 36101-0197
334-223-7280 phone    334-223-7135   fax
jerusha.adams@usdoj.gov

## MEMORANDUM OF LAW

**A.      Defense Expert's Testimony Is Not Admissible Under Fed. R. Evid. 702 And *Daubert***

Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993), the Supreme Court established a two-part test under Rule 702 for the admissibility of expert testimony: a trial judge must determine "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue."  The second inquiry of *Daubert* is the relevance aspect of Rule 702 and has been aptly described as one of "fit."  " 'Fit' " is not always obvious, and scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes."  *Daubert*, 509 U.S. at 591.

The United States contends that Dr. Fulero's expert testimony is due to be excluded because the proposed testimony fails to satisfy the second inquiry of *Daubert*.  Indeed, Dr. Folero's proposed testimony appears to be a generic, scholarly exploration of psychological theory which bears little relation to the particular facts of this case.  The defense's summary of Dr. Fulero's testimony states that "Dr. Fulero will testify about generally accepted theories of memory and the factors that affect eyewitness reliability in the acquisition, retention, and retrieval stages of memory." (Ex. 2 at 2.)  The defense further submitted that Dr. Fulero will specifically testify "that pursuant to the generally accepted theory of memory in the field of psychology, categorizes [sic] the division of the memory

process into three stages: acquisition, retention, and retrieval." (*Id.*)  The defense then provided a list of "factors at each state [which] can affect the accuracy of eyewitnesses." (*Id*. at 2-3.)  Clearly, the testimony that Dr. Fulero plans to offer does not meet *Daubert*'s "fit" requirement.  This submission of Dr. Fulero's proffered testimony presents no analysis from Dr. Fulero specifically tailored to this case and does not discuss the specific facts of this case at all.  Rather, the submission offers what appears to be a generic outline of the topics he generally discusses.  Although the expert testimony might inform the jury on all of the "intricacies of perception, retention, and recall, . . . the hazards of eyewitness identification are within the ordinary knowledge of most lay jurors" and thus would not assist them.  *See United States v. Langan*, 263 F.3d 613, 624 (6th Cir. 2001).  The jury is fully capable of assessing the eyewitnesses' ability to perceive and remember – as it would with any other witness, including law enforcement –  and can determine the reliability of eyewitness identification with the tools of cross examination.  Because Dr. Fulero's proffered testimony neither relates to any particular facts of this case nor any specific testimony of a named witness, the level of reliability of Dr. Fulero's testimony has not exceeded the quality of the jury's common sense evaluation.  Consequently, Defendant can adequately address the weaknesses of the eyewitnesses' identifications[1] in this case through cross examination and requesting detailed jury instructions on the issue.

Moreover,  Eleventh Circuit precedent supports exclusion of Dr. Fulero's testimony.  Such expert testimony has been evaluated repeatedly by the Eleventh Circuit and has been viewed

---

[1]  Notably, the robbery charge against Defendant, who is Black, is not based entirely upon the eyewitness identification of the victim bank teller, who is White.  The charge is also based upon the eyewitness identification of a second bank employee, who is Black, circumstantial evidence connecting Defendant to the suspect vehicle involved in the bank robbery, and an identification of Defendant by his father when presented with still photos from the bank surveillance cameras.

unfavorably. *See United States v. Smith*, 122 F.3d 1355, 1357 (11th Cir. 1997), *cert. denied*, 522 U.S. 1021 (1997) (and cases cited therein) (trial court did not abuse its discretion in excluding testimony of expert witness who proposed to testify that the eyewitness identification of a robbery suspect could be unreliable due to factors such as disguise, weapon focus, delay, and stress). In fact, expert testimony regarding eyewitness reliability is inadmissible per se in the Eleventh Circuit. *United States v. Holloway*, 971 F.2d 675, 679 (11th Cir. 1992), *cert. denied*, 507 U.S. 962 (1993) (noting that the "established rule of this circuit is that [the testimony of an expert in eyewitness identification] is not admissible"); *United States v. Benitez*, 741 F.2d 1312, 1315 (11th Cir.1984), *cert. denied*, 471 U.S. 1137(1985) (same); *United States v. Thevis*, 665 F.2d 616, 641 (5th Cir. Unit B 1982) (superceded by statute on other grounds).[2]

In *Thevis*, the Eleventh Circuit concluded that a district court did not err in excluding proffered expert testimony about eyewitness reliability because such testimony does not assist the jury. 665 F.2d at 641. The Circuit stated:

> To admit such testimony in effect would permit the proponent's witness to comment on the weight and credibility of opponent's witnesses and open the door to a barrage of marginally relevant psychological evidence. Moreover, we conclude, as did the trial judge, that the problems of perception and memory can be adequately addressed in cross-examination and that the jury can adequately weigh these problems through common-sense evaluation.

*Id*. The Eleventh Circuit reaffirmed this conclusion, post-*Daubert*, in *Smith*, 122 F.3d at 1357-59, wherein the defendant sought to present the testimony of an expert pertaining to similar issues which Defendant seeks to present here. Specifically, in *Smith*, the expert witness in eyewitness

---

[2] In *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982), the Eleventh Circuit concluded that Unit B panel or en banc court decisions of the former Fifth Circuit are binding precedent in this Circuit.

identification proposed to testify regarding the certain circumstances, based upon scientific research, in which eyewitness identification could be unreliable. 122 F.3d at 1357. The *Smith* expert proposed to testify about "disguise, cross-racial identification, weapons focus, presentation bias in law enforcement lineup, delay between the event and the time of identification, stress, and eyewitness certainty as a predictor of accurate identification." *Id*. at 1357. In *Smith*, the Circuit reached its decision to affirm the exclusion of the expert testimony by referencing its reasoning in *Thevis*. The *Smith* Court noted that: (1) such testimony would permit a witness to comment on the credibility of another witness; (2) the problems of eyewitness identification could be addressed through cross-examination; and (3) a jury could weigh the problems of eyewitness identification through common-sense analysis.[3] *See Smith*, 122 F.3d at 1357-59. Accordingly, in light of binding precedent and in consideration of the fact that Dr. Folero's proposed testimony would not assist the jury, but instead, improperly invade the jury's province, the United States submits that this Court should exclude Dr. Folero's testimony. *See United States v. Smith*, 148 Fed. Appx. 867, 872-873 (11th Cir. 2005) (affirming exclusion of expert testimony on eyewitness identification on the basis of *Thevis* and *Smith*).

**B.     Exclusion of Defense Expert's Testimony Is Warranted Under Fed. R. Evid. 403**

Moreover, the proposed testimony of Dr. Fulero should be excluded under Federal Rule of Evidence 403 because the probative value of the testimony is substantially outweighed by the possible danger of misleading or confusing the jury. Rule 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue

---

[3]     In *Smith*, the Circuit found it unnecessary to decide whether the rule of per se inadmissibility it had applied in pre-*Daubert* cases was consistent with *Daubert*. 122 F.3d at 1358.

delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403.[4]

The United States contends that inclusion of expert pyschological testimony on eyewitness identification in this case would result in confusion of the issues, misleading the jury, and unfair prejudice. *See id*. Allowing Defendant's expert to testify regarding general psychological theories of eyewitness identification will result in confusion of the issues because the testimony will involve facts and notions which are of no relevance to this case.

> No psychological study will ever bear directly on the specific persons making an eyewitness identification in court; psychological experts will always be forced to extrapolate from studies done on other people and opine on the relevance such data might have to the facts at hand.

*United States v. Smithers*, 212 F.3d 306, 328-329 (6th Cir. 2000) (Batchelder, J., dissenting). Such general psychological data "may leave the jurors more befuddled than enlightened." *United States v. Hall*, 165 F.3d 1095, 1119 (7th Cir. 1999) (Easterbrook, J., concurring). In addition, such expert eyewitness identification testimony likely usurps the jury's role of determining witness credibility and thus would cause the jurors to be confused and misled regarding their role as the trier of fact. *See United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999) (concluding that proffered expert psychologist's testimony on eyewitness identification would have confused the jury's assessment of the eyewitness' credibility); *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) (holding that "when an expert undertakes to tell the jury what result to reach this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's"). Further, allowing

---

[4] A *Daubert* analysis includes a consideration of Rule 403. *See Daubert*, 509 U.S. at 595.

Defendant's expert to testify regarding issues which challenge the credibility of another witness would be unduly prejudicial to the United States. "The presence of a person labeled an 'expert' by the court in the witness stand inevitably carries the risk of jurors' accepting that person's testimony as scientifically irrefutable truth." *Smithers*, 212 F.3d at 329 (Batchelder, J., dissenting). The Supreme Court itself observed in *Daubert* that "[e]xpert testimony can be both powerful and quite misleading because of the difficulty in evaluating it." 509 U.S. at 595. Courts addressing eyewitness identification expert testimony have explicitly cited the expert's "aura of reliability" as a prejudicial factor weighing against its admissibility. *See Lumpkin*, 192 F.3d at 289 ("Indeed, by our estimation, the added aura of reliability that necessarily surrounds expert testimony would have placed the [witness]'s credibility here in jeopardy."); *United States v. Purham*, 725 F.2d 450, 454 (8th Cir. 1984); *United States v. Fosher*, 590 F.2d 381, 383-84 (1st Cir. 1979) (collecting cases referencing the "aura of reliability"). Because Defendant's expert – who is also an attorney– will be presenting a one-sided view of theories showing why the testimony of other witnesses should not be believed, his testimony would be consistent with an argument by an advocate than a presentation of objective, scientific analysis. Such "expert" testimony is highly prejudicial and thus should not be admitted.

Accordingly, based upon the foregoing reasons, the United States requests this Court to exercise its discretion to exclude the testimony of Defendant's expert.

Respectfully submitted this the 10th day of March, 2008.

LEURA G. CANARY
UNITED STATES ATTORNEY


/s/ Jerusha T. Adams
JERUSHA T. ADAMS
Assistant United States Attorney
Post Office Box 197
Montgomery, Alabama 36101-0197

– 8 –

334-223-7280 phone    334-223-7135   fax
jerusha.adams@usdoj.gov

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO.  2:07-cr-165-MHT |
| | ) | |
| ANDREAS JEJUAN SMITH | ) | |

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 10, 2008, I electronically filed the foregoing with the Clerk of

the Court using the CM/ECF system which will send notification of such filing to the following:

Kevin Butler.

Respectfully submitted,

LEURA G. CANARY
UNITED STATES ATTORNEY

/s/ Jerusha T. Adams
JERUSHA T. ADAMS
Assistant United States Attorney
Post Office Box 197
Montgomery, Alabama 36101-0197
334-223-7280 phone    334-223-7135   fax
jerusha.adams@usdoj.gov

# FEDERAL DEFENDERS

## MIDDLE DISTRICT OF ALABAMA
### FEDERAL DEFENDER PROGRAM, INC.
**201 MONROE STREET, SUITE 407**
**MONTGOMERY, AL 36104**
TELEPHONE (334) 834-2099
FACSIMILE (334) 834-0353
Website: www.almfd.org

CHRISTINE A. FREEMAN
Executive Director

December 5, 2007

Jerusha Adams, Esquire
Assistant United States Attorney
131 Clayton Street
Montgomery, Alabama 36104

      **Re:**   **USA v. Andreas Smith**

Dear Jerusha:

      At trial we intend to call Dr. Sol Fulero as an expert on cross racial identification. Dr. Fulero's curriculum vitae is attached. Specifically, Dr. Fulero will testify that members of a given race have difficulty identifying members of other races.

                   Sincerely,

                   Kevin L. Butler
                   First Assistant Federal Defender

KLB/lc
Attachment



GOVERNMENT
EXHIBIT
1

# VITA

## Solomon M. Fulero

July, 2005

Vita, Solomon M. Fulero
Page 2

## Degrees Earned

Doctor of Philosophy (psychology), University of Oregon, Eugene, Oregon,
    August 1979.

Juris Doctor (law), University of Oregon, Eugene, Oregon, December 1979.

Master of Arts (psychology), University of Oregon, Eugene, Oregon, June 1975.

Bachelor of Arts (with Honors, psychology/sociology), University of Maryland,
    College Park, Maryland, June 1973.

## Licenses and Certificates

Respecialization certificate in Clinical Psychology, Wright State University,
    August 1988 (full program of retraining, including course work, practica,
    and APA-approved internship).

State of Ohio, Psychologist License No. 3796, December 1986.

State of Ohio, Attorney License, Reg. No. 0000113, May 1980.

## Awards and Honors

Member, National Institute of Justice Technical Working Group on Eyewitness
    Evidence, 1998-2000 (34-member panel of law enforcement officers,
    prosecuting and defense attorneys, and eyewitness psychologists, final
    report sets forth national standards and guidelines for the handling of
    eyewitness evidence)

Member, Committee to Study the Insanity Defense, 1993-94 (7-member "blue-
    ribbon" panel appointed by Governor, final report eventually led to Ohio
    Senate Bill 285, legislation to make changes to competency/sanity/post-
    NGRI release laws in Ohio).

Editorial Board, Law and Human Behavior, 1995- (Associate editor, 2000-)

Scholar-in-Residence Award, Sinclair College, 1990-1998 (each year).

Russell Sage Foundation Predoctoral Residency in Law and Social Science, at
    University of Oregon School of Law, 1977-78, 1978-79.

## Areas of Specialization

My major area of specialization is legal psychology.  In particular, my
interests include the social and clinical interfaces of law and psychology,
including generally the behavioral assumptions underlying evidentiary rules, jury
processes, eyewitness reliability, competency and insanity, malpractice, ethics,
and applications in civil law areas such as torts and family law.  In order to
pursue my broad forensic interests, I completed a clinical recertification program,
with an APA-approved internship.  This, along with my social psychology and
legal training, gives me a unique opportunity to pursue "cutting edge" cross-
disciplinary issues in forensic psychology, in both its social/experimental and
clinical aspects.

Vita, Solomon M. Fulero
Page 3

### *Present Academic Positions*

*Professor of Psychology, Sinclair College, Dayton, Ohio* (Department Chair, September 1993-April 2002, Professor, September 1988-present, Associate Professor, 1984-1988; Assistant Professor, 1980-1984).

*Clinical Assistant Professor of Psychology, Wright State University School of Professional Psychology,* Dayton, Ohio, 1980-present.

*Clinical Assistant Professor of Psychiatry, Wright State University School of Medicine,* 1991-present.

### *Memberships in Professional Organizations*

American Psychological Association:
  President, Division 41, American Psychology/Law Society, 2003-2004
     (President-Elect, 2002-2003; Past President, 2004-2005).
  Fellow status, elected 2000 (Division 41, American Psychology/Law Society)
  Chair, Committee on Legal Issues (COLI), 2002-2003, Member, 2000-2003
  Member of APA Council of Representatives (elected from Division 41),
     2000-2003
  Chair, Division 41 Dissertation Award Committee, 1990-93
  Chair, Division 41 Continuing Education Committee, 1995-2000
  Division 41 Executive Committee, elected Member-at-Large, 1995-1998
  Member, APA Task Force on Teaching of Psychology in
     Community Colleges, 1996-1997
American Psychological Society
Ohio Psychological Association
Midwestern Psychological Association
Ohio State, Dayton, Greene County, Butler County Bar Associations

### *Peer reviewer for scientific journals*

Law and Human Behavior (Associate Editor, 2000-2002)
Journal of Forensic Psychology Practice (also on editorial board)
Psychology, Public Policy, & Law
Behavioral Sciences and the Law
Journal of Experimental Social Psychology
Professional Psychology: Research and Practice
Journal of Applied Social Psychology
Journal of Personality and Social Psychology
—also have reviewed grant proposals for the National Science Foundation and National Institute of Mental Health

Vita, Solomon M. Fulero
Page 4

## Clinical Experience

Clinical Director, Center for Forensic Psychiatry, Hamilton, Ohio, February 1992-
September 1997. Executive officer of non-profit agency with 10
employees, $850,000 budget; responsible for court-referred evaluations in
four-county area (Butler, Warren, Clinton, Preble) in Southwest Ohio as
well as crisis, prehospital screening, and other mental health services in
Butler County. Performed hundreds of evaluations for competency,
sanity, conditional probation, mitigation, treatment in lieu of conviction,
sexual predator status, presentence investigation, police employment
screening, fitness for duty, custody and visitation, guardianship, etc.
Private Practice of Psychology, 1989-present, forensic psychology specialization.
See above.
Consulting Psychologist, Dayton Mental Health Center, Forensic Unit, 1989-
1992. For duties, see below.
Internship, Wright State University School of Professional Psychology,
September 1987-September 1988 (APA-approved). Placements at Wright
State University Psychological Services Center and Dayton Mental Health
Center, Acute Care Unit, 2000 hours total. For duties, assessment and
therapy descriptions at WSU-PSC, see below. At DMHC Acute Care Unit,
duties included individual group psychotherapy and assessment on an
acute care female admissions ward. Other residency activities included
training in supervision.
Practica, Wright State University, School of Professional Psychology:
--University Psychological Services Center, January 1987-August 1987. Duties
included assessment and therapy (individual and group) with a college
population in a college counseling center setting.
--Dayton Mental Health Center, Forensic Unit, June 1986-March 1987.
Practicum placement. Duties included assessment of competency to
stand trial, insanity, need for maximum security hospitalization.

## Publications

Simone, S. & Fulero, S. (2005). Tarasoff and the duty to protect. In S. Bucky, J.
Callan, and G. Stricker (Eds.), Ethical and Legal Issues for Mental Health
Professionals: A Comprehensive Handbook of Principals and Standards.
New York: Haworth Press, co-indexed/co-published in Journal of
Aggression, Maltreatment, & Trauma, 11, 145-168.
Wrightsman, L. & Fulero, S. (2005). Forensic Psychology, Second Edition.
Belmont, CA: Thomson/Wadsworth.
Fulero, S. & Everington, C. (2004, Spring). Assessing the capacity of persons
with mental retardation to waive Miranda rights: A jurisprudent therapy
perspective. Law and Psychology Review, 28, 53-69.

Vita, Solomon M. Fulero
Page 5

Fulero, S. (2004).   Expert psychological testimony on the psychology of interrogations and confessions. In G. D. Lassiter (Ed.), Interrogations, Confessions, and Entrapment. Kluwer Publishers.

Fulero, S. & Everington, C. (2004).  Mental retardation, competency to waive Miranda rights, and false confessions.    In G. D. Lassiter (Ed.), Interrogations, Confessions, and Entrapment. Kluwer Publishers.

Technical Working Group on Eyewitness Evidence (2003). Eyewitness evidence: A trainer's manual for law enforcement.  (co-author, alternate member of TWGEYEE Identification Training Team).    Washington, D.C.: United States Department of Justice, National Institute of Justice.  Document No. NCJ 188678.

Steblay, N., Dysart, J., Fulero, S., & Lindsay, R.C.L. (2003).  A meta-analytic comparison of showup and lineup identification accuracy.    Law and Human Behavior, 27, 523-540.

Darley, J., Fulero, S., Haney, C., & Tyler, T. (2002). Psychological jurisprudence. In J.R.P. Ogloff (Ed.), Taking psychology and law into the 21st century: Perspectives in Law and Psychology, Volume 14. New York, NY: Plenum Publishing.

Fulero, S. (2002).   Empirical and legal perspectives on the impact of pretrial publicity: Effects and remedies.   Law and Human Behavior, 26, 1-2 (foreward to Special Issue, S. Fulero, Issue Editor)

Fulero, S. (2002).  Afterword: The past, present, and future of applied pretrial publicity research. Law and Human Behavior, 26, 127-133.

Fulero, S. (2001, May).    Recent cases on false confessions and expert testimony. American Psychological Association Monitor, 32, 5-6.

Steblay, N., Lindsay, R., Fulero, S., & Dysart, J. (2001).  Eyewitness accuracy rates in sequential and simultaneous lineup presentations: A meta-analytic review. Law and Human Behavior, 25, 459-474.

Simone, S., & Fulero, S. (2001).  Psychologists' perceptions of their Tarasoff duty to protect uninformed sex partners of HIV-positive clients.    Behavioral Sciences and the Law, 19, 423-436.

Finkel, N., Fulero, S., Haugaard, J., Levine, M. & Small, M. (2001).  Everyday life and legal values: A concept paper.  Law and Human Behavior, 25, 109-123.

Fulero, S. (2001).  Review of the Level of Service Inventory-Revised (LSI-R).  In B. Plake and J. Impara (Eds.), Mental measurements yearbook, 14th Edition (pp. 692-693). Lincoln, NE: University of Nebraska Press.

Fulero, S. (2001).  Review of the Malingering Probability Scale (MPS).  In B. Plake and J. Impara (Eds.), Mental measurements yearbook, 14th Edition (pp. 701-703).  Lincoln, NE: University of Nebraska Press.

Wells, G., Fisher, R., Lindsay, R., Turtle, J., Malpass, R., & Fulero, S. (2000). From the lab to the police station: A successful application of eyewitness research. American Psychologist, 55, 581-598.

Technical Working Group on Eyewitness Evidence (1999). Eyewitness evidence: A guide for law enforcement (one of 34 authors/members).  Washington,

Vita, Solomon M. Fulero
Page 6

D.C.: United States Department of Justice, National Institute of Justice. Document No. NCJ 178240.

Fulero, S. (1999). A history of Division 41 of the American Psychological Association (American Psychology-Law Society): A Rock and Roll Odyssey. In D. Dewsbury (Ed.) Unification through division: Histories of divisions of the American Psychological Association, Volume 4 (pp. 109-127). Washington, D.C.: American Psychological Association.

Everington, C., & Fulero, S. (1999). Competence to confess: Measuring understanding and suggestibility in defendants with mental retardation. *Mental Retardation, 37*, 212-220.

Borum, R. & Fulero, S. (1999). Empirical research on the insanity defense and attempted reforms: Evidence toward informed policy. *Law and Human Behavior, 23*, 375-394.

Fulero, S., Greene, E., Hans, V., Nietzel, M., Small, M., & Wrightsman, L. (1999). Undergraduate education in legal psychology. *Law and Human Behavior, 23*, 137-153.

Steblay, N., Besirevic, J., Fulero, S., & Jimenez-Lorente, B. (1999). The effects of pretrial publicity on jury verdicts: A meta-analytic review. *Law and Human Behavior, 23*, 219-235.

Wells, G., Small, M., Penrod, S., Malpass, R., Fulero, S., & Brimacombe, C.A.E., (1998). Good practice recommendations for lineups and photospreads. *Law and Human Behavior, 22*, 603-647.

Olsen-Fulero, L. & Fulero, S. (1997). An empathy-complexity theory of rape story making. *Psychology, Public Policy,and Law, 3*, 402-427.

Turner, D. & Fulero, S. (1997). Can civility return to the courtroom? Will American jurors like it? *Ohio State Law Journal, 58,* 131-174.

Fulero, S. (1997). Review of Mistaken Identification, by Brian Cutler and Steven Penrod. New York: Cambridge University Press, 1995. *Contemporary Psychology, 42,* 395-396.

Fulero, S. & Turner, D. (1997). Using British trial procedures in American cases: A more "civil" trial? *Law and Human Behavior, 21,* 439-448.

Turner, D. & Fulero, S. (1996, July 5). Can civility return to the American courtroom? *New Law Journal, 146*, 985-986 (abridged version of above published in England.)

Fulero, S. (1996). Review of Assessing Dangerousness: Violence by Sexual Offenders, Batterers, and Child Abusers, by Jacquelyn C. Campbell (Ed.). Thousand Oaks, CA: Sage Publications, Inc., 1995. *Criminal Justice Review, 21(1),* 102-103.

Fulero, S. (1995). Review of the Psychopathy Checklist--Revised (PCL-R). In J. Impara (Ed.), Mental measurements yearbook, 12th Edition (pp. 453-454). Lincoln, NE: University of Nebraska Press.

Penrod, S., Fulero, S., & Cutler, B. (1995). Expert psychological testimony in the United States: A new playing field? *European Journal of Psychological Assessment, 11,* 65-72.

Fulero, S. & Everington, C. (1995). Assessing retarded defendants' competency to waive Miranda rights. *Law and Human Behavior, 19,* 533-543.

Vita, Solomon M. Fulero
Page 7

Penrod, S., Fulero, S., & Cutler, B. (1995). Eyewitness expert testimony before and after *Daubert*: The state of the law and the science. *Behavioral Sciences and the Law, 13,* 229-259.

Knapp, S., VandeCreek, L., & Fulero, S. (1993). The attorney-psychologist-defendant privilege in judicial proceedings. *Psychotherapy in Private Practice, 12(2),* 1-15.

Finkel, N., & Fulero, S. (1992). Insanity: Making law in the absence of evidence. *International Journal of Medicine and Law, 11,* 383-404.

Fulero, S. (1992). Legal liability in computerized assessment. In L. VandeCreek (Ed.), Innovations in Clinical Psychology, A Sourcebook, Volume 11. St. Petersburg, FL: Professional Resource Exchange.

Bremer, D., VandeCreek, L., & Fulero, S. (1992). What to do when the subpoena comes. In L. VandeCreek (Ed.), Innovations in Clinical Psychology, A Sourcebook, Volume 11. St. Petersburg, FL: Professional Resource Exchange.

Malmstrom, F., Perez, W., Fulero, S., & Weber, R. (1992). Measuring the speed of mental images. *Bulletin of the Psychonomic Society, 30(3),* 229-232.

Fulero, S. (1992). Recent developments in the duty to protect. *Psychotherapy in Private Practice, 8,* 33-43.

Fulero, S., & Finkel, N. (1991). Barring ultimate issue testimony: An "insane" rule? *Law and Human Behavior, 15,* 495-507.

Fulero, S. (1991). Plus ca change, plus c'est la meme chose: Legal and ethical issues in the practice of psychology. Review of Stromberg et al., The psychologist's legal handbook and Rinas & Clyne-Jackson, Professional conduct and legal concerns in mental health practice. *Contemporary Psychology, 36,* 43-44.

Fulero, S. & Penrod, S. (1990). Attorney jury selection folklore and scientific jury selection: What works? *Ohio Northern Law Review, 17,* 229-253.

Fulero, S, & VandeCreek, L. (1990). Privilege in group, marital and family therapy: A review of cases. *Psychotherapy Bulletin,* 25(2), 14-17.

VandeCreek, L. & Fulero, S. (1990). Potential liability for patient referral systems. *Psychotherapy Bulletin,* 25(1), 16-17.

Fulero, S. & Penrod, S. (1990). Attorney jury selection folklore: What do they think and how can psychologists help? *Forensic Reports, 3,* 233-259.

Fulero, S. (1988a). Ohio Law and Psychology Handbook. Columbus, OH: Ohio Psychology Publishing Co.

Fulero, S. (1988b). Tarasoff: Ten years later. *Professional Psychology: Research and Practice, 19,* 184-190.

Fulero, S. & Wilbert, J. (1988). Record-keeping policies of clinical and counseling psychologist: A survey of practitioners. *Professional Psychology: Research and Practice, 19,* 588-590.

Wilbert, J. & Fulero, S. (1988). Impact of malpractice litigation on professional psychology: Survey of practitioners. *Professional Psychology: Research and Practice, 19,* 379-382.

Fulero, S. (1987). The role of behavioral research in the free press/fair trial controversy: Another view. *Law and Human Behavior, 11,* 259-264.

Vita, Solomon M. Fulero
Page 8

Fulero, S. (1983).  Review of Schutz, B., Legal liability in psychotherapy.  Ohio Psychologist, 29, 27.

Cohen, S. & Fulero, S. (1982).  Applying social psychology.  In D. Sherrod, (Ed.), Social psychology (pp. 416-448).  New York: Random House.

Fulero, S. (1980, March).  Effects of adjective base rate and social desirability on stereotype formation. Dissertation Abstracts International, 40 (9-B), 4560-4561.

Rothbart, M., Evans, M., & Fulero, S. (1979).  Recall for confirming events: Memory processes and the maintenance of social stereotypes. Journal of Experimental Social Psychology, 15, 343-355.

Rothbart, M., Fulero, S., Jensen, C., Howard, J., & Birrell, P. (1978).  From individual to group impressions:   Availability heuristics in stereotype formation.  Journal of Experimental Social Psychology, 14, 237-255.

Fischhoff, B. & Fulero, S. (1977).  What makes a good explanation?  (Bulletin No. DR-10).  Eugene, OR: Decision Research.

Fulero, S. (1977).  Review of Nejelski, P. (Ed.), Social research in conflict with law and ethics.  Victimology, 2, 149-150.

Fulero, S.  (1977).  Perceived influence of endorsements on voting choices. Journalism Quarterly, 54 789-791.

Fulero, S. & DeLara, C. (1976).  Rape victims and attributed responsibility: A defensive attribution approach.  Victimology, 1, 512-518.

Fulero, S. & Fischhoff, B. (1976).  Election results and media ratings:  The "bearer of bad tidings" effect. Communication Research, 3, 22-36.

Rothbart, M., Dawes, R., Fulero, S., & Shaklee, H. (1975).  Oregon social behavior inventory.  Eugene, OR: Oregon Research Institute.


## Convention presentations

Fulero, S. (2004, August).   Ten legal fictions I have known and "loved." Presidential address presented at the annual meeting of the American Psychological Association, Honolulu, Hawaii.

Fulero, S. (2004, March).    A contrarian response to Bersoff's contrarian concerns: Atkins and the APA position.  Paper presented at the annual meeting of the American Psychology-Law Society, Scottsdale, Arizona.

Fulero, S. (2003, August).  APA amicus involvement and the Atkins case: A contrarian response to contrarian concerns.   Paper presented at the annual meeting of the American Psychological Association, Toronto, Ontario, Canada.

Fulero, S. (2003, July).   Psychological damages in civil cases.   Workshop presented to the Faculty of Advocates, at the joint American Psychology-Law Society and European Association of Psychology and Law conference, Edinburgh, Scotland.

Fulero, S. (2003, July).   Mental retardation, Miranda rights waivers, and confessions: Some policy recommendations.  Paper presented at the joint

Vita, Solomon M. Fulero
Page 9

American Psychology-Law Society and European Association of Psychology and Law conference, Edinburgh, Scotland.

Penrod, S., Fulero, S., & Steinman, M. (2003, July). Evaluations of eyewitness research and researchers by U.S. courts. Paper presented at the joint American Psychology-Law Society and European Association of Psychology and Law conference, Edinburgh, Scotland.

Fulero, S. (2003, July). Public policy implications of pretrial publicity effects. Paper presented at the joint American Psychology-Law Society and European Association of Psychology and Law conference, Edinburgh, Scotland.

Fulero, S. (2002, August). Practicing ethically. Symposium presented at the American Psychological Association convention, Chicago, IL.

Steblay, N., Dysart, J., Fulero, S., & Lindsay, R.C.L. (2002, March). A meta-analytic comparison of showup and lineup identification accuracy. Paper presented at the American Psychology-Law Society conference, Austin, TX.

Dysart, J., Steblay, N., Fulero, S., & Lindsay, R.C.L. (2002, March). Eyewitness accuracy in sequential versus simultaneous lineups: A meta-analytic review. Paper presented at the American Psychology-Law Society conference, Austin, TX.

Fulero, S. (2001, August). Psychology and law collaboration: Benefits to state psychological associations: Ohio. Paper presented at the American Psychological Association convention, San Francisco, CA.

Fulero, S. (2000, August). The effects of stress on time overestimation: A field study. Paper presented at the American Psychological Association convention, Washington, D.C.

Steblay, N., Lindsay, R., & Fulero, S. (2000, June). A meta-analysis of sequential versus simultaneous lineup procedures. Paper presented at the annual meeting of the Society for Applied Research in Memory and Cognition (SARMAC), Miami, Florida.

Fulero, S. (2000, March). Back to the future: The 1966 ABA Standards on Free Press and Fair Trial. Paper presented at the biennial meeting of the American Psychology-Law Society, New Orleans, Louisiana.

Fulero, S. (2000, March). Lights, camera, action: The use of films and videos in the undergraduate teaching of psychology and law. Paper presented at the biennial meeting of the American Psychology-Law Society, New Orleans, Louisiana.

Fulero, S. (1999, August). HIV and the Tarasoff duty to protect: A case law review. Paper presented at the American Psychological Association convention, Boston, Massachusetts.

Fulero, S. (1999, August). Everyday life and legal values. Paper presented at the American Psychological Association convention, Boston, Massachusetts.

Fulero, S. (1999, July). Daubert and Kumho: Current legal status of scientific and clinical psychological expert testimony in American courts. Paper

presented at the joint American Psychology-Law Society and European Association of Psychology and Law conference, Dublin, Ireland.

Fulero, S. (1998, August). Reliability and validity: The psycholegal research agenda after Daubert. Paper presented at the American Psychological Association convention, San Francisco, California.

Simone, S. & Fulero, S. (1998, August). Psychologists' perceived Tarasoff duty to protect with HIV-positive clients. Paper presented at the American Psychological Association convention, San Francisco, California.

Fulero, S. (1998, August). Child custody evaluations under the "Ziskin Rule." Paper presented at the American Psychological Association convention, San Francisco, California.

Fulero, S. & Hagen, M. (1998, August). On the expert testimony of mental health professionals: A debate. Presentation at the American Psychological Association convention, San Francisco, California.

Fulero, S. (1998, August). The Americans With Disabilities Act and psychological and psychiatric disabilities: An overview of the EEOC Guidelines. Paper presented at the American Psychological Association convention, San Francisco, California.

Steblay, N., Besirevic, J., Fulero, S., & Jimenez-Lorente, B. (1998, August). Pretrial publicity and jury verdicts. Paper presented as part of symposium: Penrod, S. (chair), "Psychology, law, and the media," at the 24th International Congress of Applied Psychology, San Francisco, California.

Fulero, S. (1998, March). Historical review of photospread and lineup recommendations. Paper presented as part of symposium: Wells, G. (chair), Malpass, R., Brimacombe, C.A.E., Penrod, S., Fulero, S., & Small, M. "Good practice recommendations for lineups and photospreads," at the American Psychology-Law Society convention, Redondo Beach, California.

Steblay, N. & Fulero, S. (1998, March). The effects of pretrial publicity on jury verdicts: A meta-analytic review. Paper presented at the American Psychology-Law Society convention, Redondo Beach, California.

Fulero, S. & Mossman, D. (1998, March). Legal psychology and legal scholarship: A review of the reviews. Paper presented at the American Psychology-Law Society convention, Redondo Beach, California.

Fulero, S., & Malmstrom, F. (1998, March). Accuracy of the mental image reconstruction technique in eyewitness estimates of velocity. Paper presented at the American Psychology-Law Society convention, Redondo Beach, California.

Fulero, S. (1997, August). Comparison of lineup recommendations. Paper presented as part of symposium: Wells, G. (chair), Malpass, R., Brimacombe, C.A.E., Penrod, S., Fulero, S., & Small, M. "Good practice recommendations for lineups and photospreads, presented at the American Psychological Association convention, Chicago, Illinois.

Fulero, S. (1997, August). Historical representation of legal psychology in introductory psychology texts and law reviews. Paper presented as part of smposium: Small, M. (chair), Fulero, S., Wrightsman, L., & Grisso, T.,

"History of psycholegal scholarship," presented at the American Psychological Association convention, Chicago, Illinois.

Fulero, S. (1997, August). Insanity defense reform in Ohio. Presented as part of symposium: Fulero, S. (chair), Packer, I., O'Connor, M., Callahan, L., & Perlin, M., "Into the lion's den: Politics, science, and insanity defense reform," presented at the American Psychological Association convention, Chicago, Illinois.

Turner, D. & Fulero, S. (1996, March). Using British trial procedures in American cases: A more "civil" trial? Paper presented at the American Psychology-Law Society Conference, Hilton Head, S.C.

Fulero, S. (1996, March). Integration of legal psychology into the introductory psychology course: Legal psychology made "legit." Paper presented as part of symposium: Wrightsman, L., Nietzel, M., Fulero, S., Small, M., & Hans, V. "The role of psychology and law courses in the undergraduate curriculum," presented at the American Psychology-Law Society Conference, Hilton Head, S.C.

Everington, C., & Fulero, S. (1996, March). Competence to confess: Measuring understanding and suggestibility in defendants with mental retardation. Paper presented at the American Psychology-Law Society Conference, Hilton Head, S.C.

Fulero, S. (1996, March). Psycholegal consultation in the 90s. Paper presented at the American Psychology-Law Society Conference, Hilton Head, S.C.

Penrod, S., Fulero, S., Cutler B., & Linz, D. (1995, September). Regulating the flow of expert psychological evidence to the courts: Recent developments in American law. Paper presented at the Fifth European Conference on Psychology and Law, Budapest, Hungary.

Fulero, S. & Everington, C. (1995, August). Competency to waive Miranda rights in defendants with mental retardation. Paper presented at the American Psychological Association convention, New York, N.Y.

Fulero, S. (chair/presenter), Lager, D. & Triplett, M. (1994, August). The lamb silenced: A critical analysis of criminal profiling expert evidence. Symposium presented at the American Psychological Association convention, Los Angeles, California.

Fulero, S., Merriman, P., Wester, W. (1994, April). Memory: Impact on Therapeutic Techniques, Practice Risks, Research, and Pending Ohio Legislation. Symposium presented at the Ohio Psychological Association spring convention, Columbus, Ohio, April 21, 1994.

Fulero, S. & Everington, C. (1993, August). Assessing retarded defendants' competency to waive Miranda rights. Paper presented at the American Psychological Association convention, Toronto, Ontario, Canada.

Martin, T., Fulero, S., & Davis, H. (1993, August). A survey of judges' opinions regarding novel trial techniques. Paper presented at the American Psychological Association convention, Toronto, Ontario, Canada.

Everington, C., Wulff, K., & Fulero, S. (1992, September). Issues in training of competence to stand trial in offenders with mental retardation. Paper

Vita, Solomon M. Fulero
Page 12

presented at the State Mental Health Forensic Directors convention, Portland, Oregon.

Praeger, I., Cutler, B., Fulero, S., Rogers, R., & Bagby, R. (1992, August). Effects of varying levels of expert testimony on insanity verdicts. Paper presented at the American Psychological Association convention, Washington, D.C.

Fulero, S., & Vandecreek, L. (1992, August). Privilege in group, marital, and family therapy: A review of cases. Paper presented at the American Psychological Association convention, Washington, D.C.

Fulero, S. (1991, August). Chair, "Forensic evaluation." Panel presented at the American Psychological Association convention, San Francisco, California.

Fulero, S., et al. (1991, May). Panel Chair, The Americans with Disabilities Act. Symposium presented at the Ohio State Bar Association convention, Columbus, Ohio.

Cutler, B., Hosch, H., Bothwell, R., Brock, P., Steblay, N., McCauley, M., McAllister, H., & Fulero, S. (1991, March). "Theoretical and practical issues in the assessment of eyewitness testimony." Symposium presented at the Southeastern Psychological Association convention, New Orleans, Louisiana.

Fulero, S., & Finkel, N. (1990, August). Barring ultimate issue testimony: An "insane" rule? Paper presented at the American Psychological Association convention, Boston, Massachusetts.

Cutler, B., Praeger, I., & Fulero, S. (1990, August). Jury selection in insanity cases. Paper presented at the American Psychological Association convention, Boston, Massachusetts.

Fulero, S., Wulff, K., & Olsen-Fulero, L. (1990, August). Factor analysis of the Attribution of Rape Blame Scale. Paper presented at the American Psychological Association convention, Boston, Massachusetts.

Fulero, S. (1989, August). Recent developments in the duty to protect. Paper presented at the American Psychological Association convention, New Orleans, Louisiana.

Olsen-Fulero, L., Fulero, S., & Wulff, K. (1989, August). Who did what to whom? Modeling rape jurors' cognitive processes. Paper presented at the American Psychological Association convention, New Orleans, Louisiana.

Fulero, S. & Wilbert, J. (1988, August). Record-keeping policies: A survey of practitioners. Paper presented at the American Psychological Association convention, Atlanta, Georgia.

Fulero, S., Buckhout, R., Cutler, B., Loftus, E., Kassin, S. & Penrod, S., (1988, August). Critical perspectives on the 'battle of eyewitness experts.' Discussion hour presented at the American Psychological Association convention, Atlanta, Georgia.

Fulero, S. (1988, March). Liability risks in computerized assessment. Part of symposium, Fulero, S., Aaronson, A., Brodsky, S., & Hofer, P., "Legal issues in computerized assessment," American Psychology-Law Society, Miami, Florida.

Vita, Solomon M. Fulero
Page 13

Wilbert, J. & Fulero, S. (1987, August). The effect of the malpractice "crisis" on the practice of clinical psychology: A survey of practitioners. Paper presented at the American Psychological Association convention, New York, NY.

Evans, M., Fulero, S. & Rothbart, M. (1978, May). Mnemonic factors in the maintenance of social stereotypes. Paper presented at the Western Psychological Association convention, Los Angeles, CA.

Fulero, S. (1977, April). Perceived influence of editorial endorsements: An exception to Jones and Nisbett? Paper presented at the Western Psychological Association convention, Seattle, WA.

Fulero, S. (1977, April). Similarity and respectability as factors in the attribution of responsibility to rape victims. Paper presented at the Western Psychological Association convention, Seattle, WA.

Fulero, S., Howard, J., Jensen, C., & Rothbart, M. (1977, April). Extremity effects in stereotype formation. Paper presented at the Western Psychological Association convention, Seattle, WA.

Fulero, S. & Rothbart, M. (1976, May). Attribution of causality for important events: The profound motive fallacy. Paper presented at the Western Psychological Association convention, Los Angeles, CA.

Fulero, S., (1976, May). Messenger evaluation and news valence: The "bearer of bad tidings" revisited. Paper presented at the Western Psychological Association convention, Los Angeles, CA.

Fulero, S. (1975, April). Differential evaluation of the "bearer of good tidings" and the "bearer of bad tidings." Paper presented at the Western Psychological Association convention, Sacramento, CA.

DeLara, C. & Fulero, S. (1974, April). Attribution of responsibility to a rape victim as a function of similarity. Paper presented at the Western Psychological Association convention, San Francisco, CA.

# FEDERAL DEFENDERS
## MIDDLE DISTRICT OF ALABAMA
### FEDERAL DEFENDER PROGRAM, INC.
#### 407 RSA TOWER
#### 201 MONROE STREET
#### MONTGOMERY, AL 36104

CHRISTINE A. FREEMAN
EXECUTIVE DIRECTOR

TELEPHONE (334) 834-2099
FACSIMILE (334) 834-0353

# FAX COVER LETTER

### December 5, 2007

## PLEASE DELIVER THE FOLLOWING AS SOON AS POSSIBLE:

**TO:**    Jerusha Adams

**Fax No:**    223-7560

**FROM:**    Kevin L. Butler

**NUMBER OF PAGES (including the cover sheet):** 15

**RE:**    USA v. Andreas Smith

**Please call 334-834-2099 immediately if you do not receive the entire fax.**

Confidentiality Notice: The information contained in this fax message is legally privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any use, dissemination, distribution or copy of this telecopy is strictly prohibited. If you have received this telecopy in error, please notify us by telephone and return the original message to us at the address shown above via U.S. Postal Service. Thank you.

# FEDERAL DEFENDERS

### MIDDLE DISTRICT OF ALABAMA
#### FEDERAL DEFENDER PROGRAM, INC.
### 201 MONROE STREET, SUITE 407
### MONTGOMERY, AL 36104
TELEPHONE (334) 834-2099
FACSIMILE (334) 834-0353
Website: www.almfd.org

CHRISTINE A. FREEMAN
Executive Director

December 11, 2007

Jerusha Adams, Esquire
Assistant United States Attorney
131 Clayton Street
Montgomery, Alabama 36104

      Re:   USA v. Andreas Smith

Dear Jerusha:

      As you are aware, at trial we intend to call Dr. Solomon Fulero as an expert on cross racial identification and eyewitness identification. In compliance with Rule 16, this Court's Standing Order on Criminal Discovery and the court's Order (Docket#65) entered in this case, the following is a summary of his qualifications and his testimony.

      Dr. Solomon Fulero is a recognized expert in the area of eyewitness identification, *see e.g.*, *United States v. Smithers*, 212 F.3d 306, 315 (6th Cir. 2000), also *United States v. Sullivan*, 2003 WL 680382 (E.D.Ky.)) and has been qualified as an expert on the psychology of eyewitness identification in state and federal courts throughout the United States. He was appointed by the Attorney General Janet Reno to serve on the Technical Working Group on Eyewitness Evidence, a body working under the auspices of the United States Department of Justice and the National Institute of Justice that developed national guidelines for the conduct of lineups and photo-arrays.

      He is a licensed psychologist and an attorney, having obtained a Ph.D. in psychology and a J.D. from the University of Oregon in 1979. He presently holds academic positions as a Clinical Assistant Professor of Psychology at Wright State University School of Professional Psychology and Wright State University School of Medicine and as Professor and Professor of Psychology at Sinclair College in Dayton, Ohio. His is also a Member or Fellow of numerous professional organizations, including the American Psychological Association, the American Bar Association, and the American Psychology-Law Society.



GOVERNMENT
EXHIBIT
2

Dr. Fulero's area of specialization is legal psychology, a field that includes the study of memory and eyewitness identification. He has taught numerous classes, seminars, workshops and presentations on law and psychology, including on the issue of eyewitness identification, and stays up to date with the relevant published literature in the field. He serves as a peer reviewer for scientific journals that publish articles about the reliability of eyewitness identification. His research in the area of legal psychology, including eyewitness identification, the factors that affect it and the collection of eyewitness evidence, has resulted in numerous publications in major peer-reviewed journals in the field, and he has been cited by numerous courts including the United States Supreme Court. Dr. Fulero has testified as an expert witness on eyewitness reliability approximately 100 times in the past 25 years, in state and federal courts in approximately 25 states.

Dr. Fulero will testify about generally accepted theories of memory and the factors that affect eyewitness reliability in the acquisition, retention, and retrieval stages of memory. These are based on the massive body of scientific literature in the field, consisting of several thousand studies published in peer-reviewed scientific journals, and dozens of books, and would include the following:

Specifically, Dr. Fulero will testify that pursuant to the generally accepted theory of memory in the field of psychology, categorizes the division of the memory process into three stages: acquisition, retention, and retrieval. Factors present at each stage can affect the accuracy of eyewitnesses.

A. Acquisition stage
    1.    Exposure time (longer, more accurate; but also time overestimation)
    2.    Detail salience (unusual details grab attention but detract overall)
    3.    Stress (high stress conditions cause more mistakes (not fewer, as is commonly assumed) and time overestimation)
    4.    Weapons focus (attention time spent focused on weapons; less time to focus on other stimuli)
    5.    Cross-racial identification (worse than same-race)
    6.    Effects of set and expectancy
    7.    Obvious factors (lighting, eyesight, age, etc.)
    8.    Police or people with "special training" (no better or worse than lay eyewitnesses)

B. Retention stage
    1.    Length of interval (longer, less accurate)
    2.    Post-event information (photo spreads; Identi-Kit; line-ups, descriptions, composites, hypnosis, mugshots, later views of defendant, etc., may get incorporated into memory of original event; "unconscious transference," especially with multiple procedures)
    3.    Bias in post-event information (leading questions; one-on-one confrontations; multiple procedures, etc.)
    4.    Knowledge of the identity of the suspect by the person conducting identification procedure (can be communicated unintentionally; "double-blind" technique should be used)
    5.    Conformity effects (multiple witnesses and/or communication)

6.  Suggestivity/bias (one picture/person standing out or different is more likely to be picked regardless of accuracy; match photos to description rather than to suspect)

7.  Sequential vs. simultaneous presentation of photos (sequential technique reduces false alarms/misidentifications)

8.  Instructions given to witnesses (specific instructing that perpetrator "may or may not" be in photo spread reduces false alarms/misidentifications)

9.  Effect of post-identification feedback (should not tell witnesses that they "got it right"; can affect witness memory and later confidence report)

C.  Retrieval stage

1.  Unconscious transference (is the in-court identification that of the perpetrator, or the person picked from the identification procedure or seen at some other (earlier) time?)

2.  Confidence of witness (virtually unrelated to accuracy, contrary to lay view)

I hope this is of assistance to you. Please do not hesitate to contact me if you have any questions.

Sincerely,

Kevin L. Butler
First Assistant Federal Defender

KLB/lc