IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| V. | ) | CR. No: 2:07cr165-MHT |
| | ) | |
| ANDREAS JEJUAN SMITH | ) | |

### SUPPLEMENTAL BRIEF IN RESPONSE TO THE GOVERNMENT'S MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY

**COMES NOW** the Defendant, Andreas JeJuan Smith, by and through undersigned counsel, Kevin L. Butler, and files a supplemental response to the government's motion in limine to exclude expert testimony regarding eye-witness identification. (Docket #55).

**A. The Government's Motion was Not Timely Filed**

Defense counsel first addresses the timeliness of the government's filing of the motion. The effects of the government's untimely motion became apparent to both the parties and to this Court when on Friday, March 22, 2008, the *Daubert* hearing could not be completed, resulting in inconvenience to our witness, Dr. Fulero, to the jury, and to this Court. In the interest of efficiency, defense counsel will not address the merits of this point within this brief, but does preserve this ground as a basis for denying the government's motion.

**B. The Admissibility of Expert Testimony Is Within the Trial Court's Discretion**

Defendants have a Fifth and Sixth Amendment right to present witnesses that are both material and favorable to their defense. *United States v. Valenzuela-Bernal*, 458 U.S. 858 (1982); *Crane v. Kentucky,* 476 U.S. 683 (1986); *Chambers v. Mississippi,* 410 U.S. 284 (1973); see also *United States v. Hester*, 205 Fed.Appx. 713, 717-18 (11th Cir. 2006). Defense counsel offers Dr.

Solomon Fulero's testimony in order to provide a defense against an eye-witness upon whose identification the government relies. Regardless of the Eleventh Circuit's position regarding expert testimony on eyewitness identification, it has consistently held that the admissibility of expert testimony resides within the broad discretion of the trial judge. *See United States v. Bender*, 290 F.3d 1217 (11th Cir. 2002) (finding that witness is qualified to render expert opinion is matter within judge's broad discretion and will not be reversed on appeal unless it is manifestly erroneous); *United States v. Chastain*, 198 F.3d 1338 (11th Cir. 1999) (District court's decision on the competency of, and the weight to be accorded to, the testimony of an expert is a highly discretionary one, and the decision to admit witness's testimony as an expert can only be reversed if the decision is manifestly erroneous.); *United States v. Smith,* 122 F.3d 1355, 1357 (11th Cir. 1997) ("A district court's decision to admit or exclude evidence will not be disturbed on appeal absent a clear abuse of discretion"); *United States v. Gold*, 743 F.2d 800 (11th Cir. 1984) (Trial judge has broad discretion in deciding whether to qualify witness as an expert, and his action must be sustained on appeal unless it is manifestly erroneous).

  Regarding Dr. Fulero's testimony, it is within this Court's discretion whether or not it is admissible. The *Daubert* test provides the guide for making this determination. "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, an expert may testify thereto." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). The government argues that Eleventh Circuit precedent looks unfavorably upon admitting expert eyewitness identification testimony and has called it *per se* inadmissible. *United States v. Holloway*, 971 F.2d 675, 679 (11th Cir. 1992), *cert. denied,* 507 U.S. 962 (1993). However, all of the other circuits have rejected **per se** exclusion of

2

such testimony.[1] "In short, subject to the trial court's careful supervision, properly conceived expert testimony may be admissible to challenge or support eyewitness evidence." *United States v. Rodriguez-Felix,* 450 F.3d 1117, 1124 (10th Cir. 2006); *see also United States v. Smith*, 156 F.3d 1046, 1053 (10th Cir. 1998) ("The trend is to admit expert testimony on eyewitness identification under certain circumstances, which should be examined on a case-by-case basis."). Therefore, this Court is free to admit Dr. Fulero's testimony upon finding that the testimony satisfies *Daubert*.

**C. Reliability of the Scientific Basis for Expert Testimony on Eye-witness Identification**

> **I. Many courts have recognized the problems associated with eyewitness identifications and have readily accepted the science and the admissibility of such testimony in certain circumstances**

There is an emerging trend in courts around the country that have found the psychology behind eyewitness identifications to be reliable and admissible in certain circumstances.[2] Arguably, this trend stems from long-standing recognition that eyewitness identifications are inherently faulty and problematic in criminal trials. The United States Supreme Court concluded many years ago that "the vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification." *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977) (quoting

---

[1] *See United States v. Brien*, 59 F.3d 274, 277 (1st Cir. 1995); *United States v. Lumpkin*, 192 F.3d 280, 289 (2nd Cir. 1999); *United States v. Stevens*, 935 F.2d 1380, 1400-01 (3d Cir. 1991); *United States v. Harris*, 995 F.2d 532, 534-35 (4th Cir. 1993); *United States v. Moore*, 786 F.2d 1308, 1312-13 (5th Cir. 1986); *United States v. Smith*, 736 F.2d 1103, 1107 (6th Cir. 1984); *United States v. Hall*, 165 F.3d 1095, 1106-07 (7th Cir. 1999); *United States v. Blade*, 811 F.2d 461, 465 (8th Cir. 1987); *United States v. Rincon*, 28 F.3d 921, 926 (9th Cir. 1994); *United States v. Smith*, 156 F.3d 1046, 1052 (10th Cir. 1998).

[2] *See, e.g., United States v. Moonda*, 2007 WL 1875861 (N.D. Ohio June 28, 2007); *United States v. Sullivan,* 246 F.Supp.2d 696 (E.D.Ky. 2003)*; United States v. Lester,* 234 F.Supp.2d 595 (E.D. Va. 2002); *United States v. Hines*, 55 F. Supp. 2d 62 (D. Mass. 1999); *United States v. Jordan*, 924 F. Supp. 443 (W.D.N.Y. year); *State v. Cromedy*, 727 A.2d 457 (N.J. 1999); *United States v. Norwood*, 939 F.Supp. 1132 (D.N.J. 1996).

3

*United States v. Wade,* 388 U.S. 218, 228 (1967). In *United States v. Brownlee*, 454 F.3d 131 (3d Cir. 2006), the court stated that "[i]t is widely accepted by courts, psychologists and commentators that 'the identification of strangers is proverbially untrustworthy'" (*quoting* Felix Frankfurter, *The Case of Sacco and Vanzetti: A Critical Analysis for Lawyers and Laymen* 30 (Universal Library ed., Grosset & Dunlap 1962) (1927)).

Over the past twenty years, courts' treatment of expert testimony regarding eyewitness identification has transformed. The first case to address the issue, *United States v. Amaral*, 448 F.2d 1148 (9th Cir. 1973), held that the trial court did not err in excluding the testimony because cross-examination was sufficient to reveal weaknesses in the identification. *Amaral*, 448 F.2d at (pin). After that case, a series of cases followed rejecting such testimony for similar and other reasons.[3]

However, this trend began to shift in the 1980s due to the emerging view that expert testimony may be offered in certain circumstances where psychological factors may influence the memory process. *See, e.g., United States v. Moore,* 786 F.2d 1308, 1313 (5th Cir. 1986) (finding that "[i]n a case in which the sole testimony is casual eyewitness identification, expert testimony regarding the accuracy of that identification is admissible and properly may be encouraged . . ."); *United States v. Downing*, 753 F.2d 1224, 1232 (3d Cir. 1985) (reasoning that expert testimony on eyewitness perception and memory [should] be admitted at least in some circumstances"); *United*

---

[3] *See, e.g., United States v. Purham,* 725 F.2d 450, 454 (8th Cir. 1984) (finding the question is within the expertise of the jurors); *United States v. Thevis*, 665 F. 2d 616, 641 (5th Cir. 1982) (reasoning that identification was adequately addressed through cross-examination); *United States v. Sims*, 617 F.2d 1371, 1375 (9th Cir. 1980) (finding no general acceptance in the scientific community); *United States v. Fosher*, 590 F.2d 381, 383 (1st Cir. 1979) (ruling that the testimony would be prejudicial).

*States v. Smith*, 736 F.2d 1103, 1107 (6th Cir. 1984) ("The day may have arrived, therefore, when Dr. Fulero's testimony can be said to conform to generally accepted explanatory theory.").

The Sixth Circuit in *United States v. Smithers*[4], 212 F.3d 306 (2000) took notice of the problems associated with eyewitness identification in footnote one of its opinion. The court noted that social science data suggests that jurors are unaware of several scientific principles affecting eyewitness identifications.[5] In fact, many jurors' assumptions about how memories are created are actively wrong.[6] Additionally, the court noted that one study has estimated that half of all wrongful convictions result from false identifications.[7] And it has been estimated that more than 4,250 Americans per year are wrongfully convicted due to sincere, yet woefully inaccurate eyewitness identifications.[8] In fact, "mistaken eyewitness identifications are responsible for more wrongful convictions than all other causes combined." *See Brownlee*, 454 F.3d at 142 (*quoting* A. Daniel Yarmey, *Expert Testimony: Does Eyewitness Memory Research Have Probative Value for the Courts?*, 42 Canadian Psychology 92, 93 (May 2001)). A principal cause of wrongful convictions comes from the fact that juries are unduly receptive to identification evidence and are not aware of

---

[4] Dr. Solomon Fulero was the expert in this case.

[5] *See generally* Roger V. Handberg, *Expert Testimony on Eyewitness Identification: A New Pair of Glasses for the Jury*, 32 AM. CRIM. L. REV. 1013, 1018-22 (1995).

[6] Handberg, *supra*, at 1022.

[7] *See* Elizabeth F. Loftus, *Ten Years in the Life of an Expert Witness*, 10 LAW & HUM. BEHAV. 241, 243 (1986).

[8] Andre A. Moenssens et al., SCIENTIFIC EVIDENCE IN CIVIL AND CRIMINAL CASES § 19.15, at 1171-72 (4th ed. 1995) (citing *United States v. Wade,* 388 U.S. 218, 87 (1967)).

5

its dangers.[9] Furthermore, jurors tend to overestimate the accuracy of eyewitness identifications because they often are unaware of what factors they should consider when analyzing eye-witness testimony.[10] Based on the "dichotomy between eyewitness errors and jurors' reliance on eyewitness testimony, this Circuit has held that expert testimony on the subject of eyewitness identification is admissible." *Smithers*, 212 F.3d at 312.

**II. The test for reliability is flexible and Dr. Fulero's testimony meets the test**

The test for reliability is a flexible one, and *Daubert's* list of specific factors neither necessarily nor solely applies to all experts or in every case. *See, e.g., United States v. Abreu*, 406 F.3d 1304 (11th Cir. 2005)*; United States v. Hansen,* 262 F.3d 1217 (11th Cir. 2001)*; United States v. Paul*, 175 F.3d 906 (11th Cir. 1999). The Supreme Court in *Daubert* listed four nonexclusive factors that a trial court may consider in making its reliability assessment: (1) whether the theory at issue can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether there is a known or potential rate of error and whether there are standards controlling the methodology's operation; and (4) whether the theory has been accepted in the relevant scientific community. *Daubert*, 509 U.S. at 593-94.

Here, Dr. Fulero will proffer testimony during the *Daubert* hearing that fits most, if not all, of the factors. The theory that scientific factors affect one's ability to remember and recall certain events, particularly events that involve stressful situations, has been tested numerous times by

---

[9]Patrick M. Wall, EYE-WITNESS IDENTIFICATION IN CRIMINAL CASES 19 (1965). *See also Watkins v. Sowders*, 449 U.S. 341, 352 (1981) (stating that "[t]here is almost nothing more convincing than a live human being who takes the stand, points a finger at the defendant, and says 'That's the one!'") (Brennan, J. dissenting).

[10]Handberg, *supra,* at 1022.

6

psychologists across the country, including Dr. Fulero. Most importantly, these factors relate to concepts that are beyond the common knowledge of most jurors. A wealth of articles and studies exist describing the science behind memory and perception which have been subjected to peer review.[11] Furthermore, Dr. Fulero's vitae reflects his expertise in this field. His major area of specialization is legal psychology, which includes the behavioral assumptions underlying evidentiary rules, jury processes, eyewitness reliability, competency and insanity, malpractice and ethics. He serves as peer reviewer for many scientific journals, including *Law and Human Behavior*, *Journal of Forensic Psychology Practice, Psychology, Public Policy & Law, Behavioral Sciences and the Law, Journal of Experimental Social Psychology,* and *Professional Psychology: Research and Practice*. He has also written numerous articles on the issue.

In *United States v. Langan*, 263 F.3d 613 (6th Cir. 2001), the court refers to Dr. Fulero as "the expert in *Smithers*, whose 'qualifications and scientific methods' [have] already been 'praised' by the Sixth Circuit." (*citing Smithers,* 212 F.3d at 315). The district court for the Northern District of Ohio stated that "Dr. Fulero and his methods easily satisfy the first *Daubert* requirement for reliability." *United States v. Moonda*, Slip Copy, 2007 WL 1875861 (N.D. Ohio June 28, 2007).

**D. The "Fit" Requirement**

**I. Dr. Fulero's testimony "fits" the facts at issue in this case**

The majority of cases which exclude expert testimony on this issue do so because courts have held that such testimony does not assist the trier of fact. The Eleventh Circuit has held that "the problems of perception and memory can be adequately addressed in cross-examination and .

---

[11] Dr. Fulero will give more detailed testimony regarding the various research studies he uses to substantiate his opinions when the *Daubert* hearing resumes.

. . the jury can adequately weigh these problems through common sense evaluation." *United States v. Smith,* 122 F.3d 1355, 1358 (11th Cir. 1997).  However, The Third Circuit in *Brownlee* pointed out that "jurors seldom enter a courtroom with the knowledge that eyewitness identifications are unreliable." *Brownlee,* 454 F.3d at 142 (citing Rudolph Koch, Note, *Process v. Outcome: The Proper Role of Corroborative Evidence in Due Process Analysis of Eyewitness Identification Testimony,* 88 Cornell L. Rev.1097, 1099 n.7 (2003).  The court further stated, "[t]hus, while science has firmly established the "inherent unreliability of human perception and memory, this reality is outside the jury's common knowledge, and often contradicts jurors' commonsense understandings." *Id.*

In *Rodriguez-Felix*, the Tenth Circuit pointed to studies which show that despite jurors' belief to the contrary, a more confident eyewitness is not necessarily a more accurate eyewitness. *Rodriguez-Felix,* 450 F.3d at 1124 n.4 (citing Elizabeth F. Loftus & James M. Doyle, *Eyewitness Testimony* § 1-1 (3d ed. 1997 & Supp. 2005) (suggesting that defendants' conviction rates substantially increase when an eyewitness testifies).  Also, the court noted that "it is well-established that there exists a comparative difficulty in recognizing individual members of a race different from one's own." *Id.* at 1124 n.8.  The court also addressed the narrow circumstances in which expert testimony could be appropriately admitted, including cross-racial identification, identification after a long delay, and identification after observation under stress.  *Id.* at 1124 (quoting *United States v. Harris,* 995 F.2d 532, 534 (4th Cir. 1993).

The Third Circuit in *Brownlee* held that expert testimony on the issue of confidence versus accuracy was necessary "to rebut the natural assumption that such a strong expression of confidence indicates an unusually reliable identification". *Brownlee,* 454 F.3d at 144.     Furthermore, abuse of discretion

8

has been found when expert testimony was excluded which concerned matters that would not necessarily be apparent to jurors or where it might be difficult for jurors to comprehend how the matter might be drawn out through cross-examination. *Id.* at 1125, *see also United States v. Mathis*, 264 F.3d 321, 342 (3d Cir. 2001). Thus, for these issues, cross-examination does little or nothing to aid the jury in assessing the testimony of a witness that represents the chief, if not the only, evidence against Andreas Smith.

With regard to the "fit" of the proposed testimony, the expert must make an on-the-record proffer to the court explaining how the testimony is relevant to the eyewitness identifications under consideration. *United States v. Downing,* 753 F.2d 1224, 1242 (3d Cir. 1985). Here, Dr. Fulero will educate the jury about general factors that affect eyewitness accuracy, including the specific issues of: (1) the relationship between the time that has passed since observing the event and the accuracy of recalling it; (2) the effect of post-identification events on memory; (3) the fact that when one person both prepares and administers a photo spread, the likelihood of misidentification increases; (4) the "conformity effect" (i.e. the fact that witnesses' memories are altered by talking about the event with each other after it occurs); (5) the relationship between a witness' confidence in her recollection and its accuracy; (6) weapons focus; (7) stress; (8) the violence of the situation; and (9) the cross-racial aspects of identification.

In the present case, the government offered eyewitness testimony by the victim bank teller, Ms. Annette Gurley, and another bank employee, Mr. Daniel Robinson[12]. In its case in chief, the

---

[12] The defense focuses more on the testimony of Ms. Gurley because she has put forth a confidence statement, whereas Mr. Robinson did not specifically identify the defendant. His testimony revealed that he was only about 70% sure that the person in photograph six of the line-up had *characteristics* of the robber.

government did not produce any other corroborating evidence linking Mr. Andreas Smith to the bank robbery, including fingerprints or DNA evidence. The lack of other corroborating evidence in this case places extreme importance on Ms. Gurley's testimony.

Defense counsel argues that Ms. Gurley's testimony in particular is rife with problems that directly fit Dr. Fulero's testimony. The government introduced a bank surveillance tape that revealed no identifiable features of the robber. During the direct testimony of Ms. Gurley, it was established that the whole incident took less than a minute, even though the witness testified that it felt longer; that the robber alerted her that he had a gun (**weapons focus/stress/violence of the situation**); and that the victim teller was white and the robber was black (**cross-racial identification**). It was also established that Ms. Gurley had identified another person as someone who could have been the robber two days after the robbery at the bank occurred, but then identified the defendant in a photographic line-up two weeks or so later (**effects of time passing from the event and the ability to recall it / effects of post-identification events on memory**). Additionally, Ms. Gurley repeatedly stated that she was nervous during the encounter (**stress/violence of the situation**). During re-direct of the witness, the government essentially elicited a confidence statement from Ms. Gurley that she selected the defendant's photograph in the line-up "without hesitation" (**confidence v. accuracy**). It was also established through a subsequent witness that the photographic line-up was prepared by and presented to Ms. Gurley by the same officer (**when one person both prepares and administers a photo spread, the likelihood of misidentification increases**).[13]

---

[13] As trial is still in progress, there is no record to cite to these particular facts. Counsel adds this information based on notes taken during trial.

Based on the facts elicited during testimony in trial, each of these facts "fit" most if not all of the factors that Dr. Fulero will discuss in his testimony. Furthermore, cross-examination will not be sufficient to rebut the testimony of the government's chief witness because the issues of cross-racial identification and stress as well as the relationship between confidence and accuracy have been found to be issues outside of the jury's common knowledge.

The government cites in its motion to *United States v. Moonda* as an instructive case where the district court held that Dr. Fulero's testimony did not pass the "fit" test, and uses it to bolster its argument that Dr. Fulero's testimony does not fit this case. However, the particular facts of a case drive the "fit" analysis; therefore, a court's rejection of the "fit" in one case may not serve as the precedent for rejecting the fit in the present case. *See United States v. Rodriguez-Felix,* 450 F.3d 1117, 1124 (10th Cir. 2006). Furthermore, it is interesting that the government submits *Moonda* as being instructive on this issue, but they failed to mention that *Moonda* found Dr. Fulero's testimony to satisfy the reliability prong of *Daubert*. *See Moonda*, 2007 WL 1875861 at 1 ("Dr. Fulero and his methods easily satisfy the first *Daubert* requirement for reliability").

**II.    "Fit" has been found when the eyewitness testimony represents the chief, if not sole, evidence against the defendant**

The Fifth, Sixth and Eighth Circuits have found that there is no abuse of discretion where trial courts exclude eyewitness identification expert testimony in cases where the identification is only a small part of the Government's case. *United States v. Jordan,* 924 F.Supp.443, 447 (W.D.N.Y. 1996). In other words, where there is an "evidentiary cornucopia" that corroborates the eyewitness identification, excluding the testimony is harmless error. *See Rodriguez-Felix,* 450 F.3d

at 1126. However, "where a prosecutor relies wholly on eyewitness identifications, such expert testimony should probably be admitted." *Id., see also United States v. Blade,* 811 F.2d 461 (8th Cir.), *cert. denied,* 484 U.S. 839 (1987) (finding no abuse of discretion in decision to exclude expert testimony where Government's case relied on more than only the eyewitness identification); *United States v. Moore,* 786 F.2d 1308 (finding no abuse of discretion in decision to exclude expert testimony where eyewitness identification only a small part of Government's case but noting that admission would be proper where such identification is the only evidence), *reh'g denied,* 791 F.2d 928 (5th Cir. 1986); *United States v. Smith*, 736 F.2d 1103 (6th cir.) (finding harmless error in decision to exclude expert testimony where there were three separate eyewitnesses and a definitive palm print), *cert. denied,* 469 U.S. 868 (1984). Similarly, in *United States v. Lester,* the court found the expert's testimony relevant where the government's case rested almost exclusively on the testimony of two eyewitnesses, each of whom is a different race from the perpetrator, and each of whom saw the perpetrator under stressful circumstances. *United States v. Lester,* 234 F.Supp.2d 595, 600 (E.D. Va 2002). The court stated that "[i]t is, therefore, highly likely that the credibility of the eyewitnesses' testimony in the eyes of the jury will determine Lester's guilt or innocence. The subjects about which [the expert] proposes to testify might prove useful to the jury in assessing credibility." *Id.*

  Here, the government has not offered any fingerprint or DNA evidence linking Mr. Andreas Smith to the bank robbery. The jury was shown a bank surveillance tape, but the tape did not definitively reveal that the robber was Mr. Smith. Because jurors tend to be unduly influenced by eyewitness testimony, and because Ms. Gurley's testimony represents the chief evidence against Mr. Smith, Dr. Fulero's testimony is crucial in giving jurors an appropriate gauge by which to

12

weigh her testimony.

**E. The Probative Value of Dr. Fulero's Testimony Substantially Outweighs Any Prejudice**

The Eleventh Circuit has held that Rule 403 of the Federal Rules of Evidence is an extraordinary remedy that should be used sparingly because it allows the court to exclude admittedly probative evidence. *United States v. Ross,* 33 F.3d 1507 (11th Cir. 1994). The Eleventh Circuit's review of the district court's decision is quite deferential, stating that "[t]he district court is uniquely situated to make nuanced judgments on questions that require the careful balancing of fact-specific concepts like probativeness and prejudice, and we are loathe to disturb sound exercise of its discretion in these cases." *United States v. Jernigan*, 341 F.3d 1273, 1285 (11th Cir. 2003).

"The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). In *United States v. Smith,* 736 F.2d 1103 (6th Cir. 1984), the court accurately stated that the "prejudice envisioned by Rules 403 and 702 is prejudice to a *criminal defendant*." *Smith,* 736 F.2d at 1107. The court in *Smith* also observed that the trend in federal court is to admit expert testimony when it aids the jury, but the countervailing restraint on admitting such testimony is the defendant's right to a fair trial. *Id.*

Here, it is counterintuitive for the government to argue that the admission of Dr. Fulero's testimony would be prejudicial to Andreas Smith. In fact, it is arguable that the opposite is true. The government's main evidence against Mr. Smith is the eyewitness testimony of Ms. Gurley. This testimony was bolstered by a confidence statement elicited on re-direct by the government. We can expect the government to stress that point in closing argument. Therefore, in providing a

13

fair trial to Mr. Smith, he should be allowed to offer expert testimony to rebut the government's evidence against him.

WHEREFORE, because of the untimeliness of the government's filing and the other reasons set forth above, the government's motion to exclude Dr. Fulero's testimony should be denied.

Dated this 28th day of March 2008.

Respectfully submitted,

s/ Kevin L. Butler
KEVIN L. BUTLER
First Assistant Federal Defender
201 Monroe Street, Suite 407
Montgomery, Alabama 36104
Phone: (334) 834-2099
Fax: (334) 834-0353
E-mail: kevin_butler@fd.org
AZ Bar Code: 014138

s/Danielle Mason
DANIELLE MASON
Certified Legal Intern
Federal Defenders
201 Monroe Street, Suite 407
Montgomery, Alabama 36104
Phone: (334) 834-2099
Fax: (334) 834-0353

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| V. | ) | CR. No: 2:07cr165-MHT |
| | ) | |
| ANDREAS JEJUAN SMITH | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on March 28, 2008, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Jerusha Adams, Esquire
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, Alabama 36104

    Respectfully submitted,

    s/ Kevin L. Butler
    KEVIN L. BUTLER
    First Assistant Federal Defender
    201 Monroe Street, Suite 407
    Montgomery, Alabama 36104
    Phone: (334) 834-2099
    Fax: (334) 834-0353
    E-mail: kevin_butler@fd.org
    AZ Bar Code: 014138