IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO.  2:07-cr-165-MHT |
| | ) | |
| ANDREAS JEJUAN SMITH | ) | |

UNITED STATES' BRIEF ON SENTENCING ISSUES

COMES NOW the United States of America, by and through Leura G. Canary, United States Attorney for the Middle District of Alabama, and files its brief in response to the Court's Order of April 18, 2008, (Doc. # 121), as follows.

1.    **A court can, in general, consider acquitted conduct**.

The United States submits that a court can consider acquitted conduct for sentencing purposes.  Under 18 U.S.C. § 3661, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."  In *United States v. Watts*, 519 U.S. 148, 157 (1997), the United States Supreme Court held that "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." The Eleventh Circuit has adhered to this principle of law and has long-standing precedent establishing that acquitted conduct of a defendant may be taken into account as relevant conduct in sentencing the defendant for the offense of conviction so long as the government has proven the acquitted conduct by a preponderance of the evidence.  *See United States v. Faust*, 456 F.3d 1342, 1347 (11th Cir. 2006), *cert. denied*, 127 S. Ct. 615 (2006); *United States v. Barakat*, 130 F.3d 1448,

1452 (11th Cir. 1997); *United States v. Frazier*, 89 F.3d 1501, 1506 (11th Cir. 1996); *United States v. Averi*, 922 F.2d 765, 766 (11th Cir. 1991). In turn, this Court has followed binding precedent and considered acquitted conduct in determining a defendant's sentence when such conduct was proved by a preponderance of the evidence. *E.g., United States v. Trammell*, 385 F. Supp. 2d 1215, 1224 (M.D. Ala. 2005) (Thompson, J.) (considering acquitted conduct in determining drug amount attributable to defendant); *see United States v. Siegelman*, 2007 WL 2021961, *1 (M.D. Ala. 2007) (Fuller, C.J.) (noting "firmly established law of the Eleventh Circuit" that acquitted conduct may be taken into account for sentencing purposes).

Notably, the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), does not impact the aforementioned precedent. As explained by the Eleventh Circuit, post-*Booker* "courts may still consider relevant facts concerning a defendant's 'background, character, and conduct' when making sentencing calculations, even if those facts related to acquitted conduct." *Faust*, 456 F.3d at 1348 (citation omitted). The Circuit further found that "under an advisory Guidelines scheme, courts can continue to consider relevant acquitted conduct so long as the facts underlying the conduct are proved by a preponderance of the evidence and the sentence imposed does not exceed the maximum sentence authorized by the jury verdict." *Id*. *See also United States v. Duncan*, 400 F.3d 1297, 1304-05 (11th Cir. 2005), *cert. denied*, 126 S. Ct. 432 (2005) (noting that *Booker* "does not suggest that the consideration of acquitted conduct violates the Sixth Amendment as long as the judge does not impose a sentence that exceeds what is authorized by the jury verdict").

   2.    **Under the specific circumstances presented in this case, this court <u>can</u> consider acquitted conduct.**

The United States contends that, under the specific circumstances in this case, this Court can

consider acquitted conduct in determining Defendant's sentence.  On August 15, 2007, Defendant was charged in a four-count indictment with robbing a bank, shooting at federal officers, using a firearm in furtherance of a crime of violence, and possessing a firearm after having been previously convicted of a felony.  Count One of the Indictment alleges that Defendant, on June 22, 2007, "knowingly and willfully [took] by force and violence and intimidation . . . money, belonging to and in the care, custody, control, management, and possession of Compass Bank located at 3480 Eastern Boulevard, Montgomery, Alabama, . . . in violation of Title 18, United States Code, Section 2113(a)."  (Doc. # 3.)  Count Two of the Indictment alleges that Defendant, on July 20, 2007, "knowingly and by means and use of a deadly or dangerous weapon," forcibly assaulted  "Deputies of the United States Marshals Service, while they were engaged in and on account of the performance of their official duties, in violation of Title 18, United States Code, Section 111(b)." (*Id.*)  Count Three of the Indictment alleges that, on that same date in July 2007,  Defendant "knowingly used and carried a firearm during and in relation to and possessed a firearm in furtherance of, a crime of violence for which he may be prosecuted in a court of the United States, to-wit: forcibly assaulting a federal officer with use of a deadly weapon as charged in Count 2 . . . in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii)."  (*Id.*)  Finally, Count Four of the Indictment alleges that Defendant, on July 20, 2007, after having been previously convicted twice for the felony of receiving stolen property, "knowingly and willfully possess[ed] a firearm, in and affecting commerce, that is a loaded Smith & Wesson, .40 caliber semi-automatic handgun . . . in violation of Title 18, United States Code, Section 922(g)(1)."  (*Id.*)

The case proceeded to trial and, on April 2, 2008, the jury returned a verdict convicting Defendant of robbing the Compass bank (Count 1) and being a felon in possession of the Smith &

Wesson firearm (Count 4). (Doc. # 117.) Defendant was acquitted of the shooting at federal officers charge (Count 2) and the other weapon charge (Count 3). (*Id.*)

At trial,[1] the United States presented testimony from John C. Hamilton, Deputy United States Marshal, establishing that Defendant answered the front door to the residence (2861 Jan Drive) immediately prior to shots being fired. Deputy Hamilton also testified that he, accompanied by another federal officer, announced himself as law enforcement, identified Defendant by name, and requested Defendant to exit the residence. Deputy Hamilton further testified that, after the shots were fired at the front door of the residence, he entered the residence from the rear and observed Defendant holding the Smith & Wesson firearm while running from the front to the back of the residence. According to Deputy Hamilton, at no point did he see any other individual holding the Smith & Wesson or any other firearm. Willie Jackson, the owner of the residence at issue, testified that only he, Defendant, and Jamal Clark were present in the residence when the shooting occurred. Likewise, Clark testified that only he, Defendant, and Jackson were present in the residence when the shooting occurred. In addition, both Clark and Jackson testified that, immediately prior to the shooting, Defendant approached the front door of the residence while holding the Smith &Wesson firearm. Both Jackson and Clark testified that they were located in the rear of the residence when the shooting occurred, both denied discharging the Smith & Wesson at federal officers, and both testified that Defendant was the shooter. Jim Alston, Deputy United States Marshal, testified that he secured all three weapons discovered in the residence the night of the shooting and that the Smith

---

[1] The United States refers to trial testimony without the benefit of a trial transcript. Correspondingly, to the extent necessary, the United States will present evidence at the sentencing hearing to establish by a preponderance of the evidence any relevant fact which is in dispute and was not presented at trial.

& Wesson firearm, which he recovered by Defendant's feet, was the only firearm that had been discharged that night. Kathy Richert, Section Chief of the Firearms Unit for Alabama Department of Forensic Science, testified that the two spent shell casings recovered from the residence were discharged from the Smith & Wesson firearm.

Under Eleventh Circuit law, after *Booker*, "the district court is still required to correctly calculate the guidelines range, and the same standards of review apply." *United States v. Caldwell*, 431 F.3d 795, 798 (11ᵗʰ Cir. 2005). Section 1B1.2 of the United States Sentencing Guidelines provides that the applicable guideline range should be determined "in accordance with § 1B1.3 (Relevant Conduct)." U.S.S.G. § 1B1.2(b). Section 1B1.3, in turn, describes in broad language the conduct that a sentencing court may consider in determining the applicable guideline range. Specifically, the relevant conduct section provides that a defendant's base offense level, specific offense characteristics, cross references,[2] and adjustments shall be determined on the basis of "all acts and omissions, committed, aided, abetted, counseled . . . or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1)(A) & (B).

The United States submits that this Court can consider Defendant's relevant acquitted conduct in correctly calculating his guideline range in accordance with § 2K2.1(b). Section 2K2.1 is the applicable offense guideline section for Defendant's conviction of being a felon in possession of the Smith & Wesson firearm. *See* U.S.S.G. § 2K2.1. Under § 2K2.1(b)(6), this Court can

---

[2] Under § 1B1.5, a cross reference is an "instruction to apply another offense guideline" and "refers to an entire offense guideline (i.e., the base offense level, specific offense characteristics, cross references, and special instructions)." U.S.S.G. § 1B1.5.

consider Defendant's relevant acquitted conduct and increase the base offense level by four levels "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6). This subsection applies if the firearm "facilitated, or had the potential of facilitating, another felony offense." U.S.S.G. § 2K2.1, Application Note 14(A). For purposes of subsection (b)(6), "another felony offense" is defined as "any federal, state, or local offense, other than the . . . firearms possession . . . , punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." U.S.S.G. § 2K2.1, Application Note 14(C). Defendant's relevant acquitted conduct, i.e., discharging the Smith & Wesson firearm at law enforcement or forcibly assaulting federal officers with use of a deadly weapon, falls squarely within the definition of "another felony offense." Consequently, the acquitted conduct can be considered by the court in calculating Defendant's offense level under § 2K2.1(b)(6) because Defendant used and possessed the Smith & Wesson firearm "in connection with" the commission of another felony offense, namely, the assault. *See* U.S.S.G. § 2K2.1(b)(6).

Moreover, the Court can consider Defendant's relevant acquitted conduct under the cross reference in § 2K2.1(c). Section 2K2.1(c) instructs that the offense level calculated under § 2X1.1 applies "if the defendant used or possessed any firearm . . . in connection with the commission or attempted commission of another offense" and the resulting base level is higher than it would otherwise be. U.S.S.G. § 2K2.1(c). The guidelines elucidate this issue in Application Note 3 to § 1B1.5:

> A [cross] reference may direct that, if the conduct involved another offense, the offense guideline for such offense is to be applied. Consistent with the provisions of §1B1.3 (Relevant Conduct), such other offense includes conduct that may be a state or local offense . . . . Where there is more than one such other offense, the most serious such offense . . . is to be used. *For example, if a defendant convicted of*

> *possession of a firearm by a felon, to which §2K2.1 . . . applies, is found to have possessed that firearm during commission of a series of offenses, the cross reference at §2K2.1(c) is applied to the offense resulting in the greatest offense level.*

U.S.S.G. § 1B1.5, Application Note 3 (emphasis added). Section 2X1.1, in turn, instructs that the offense level to be applied is the offense level that is the same as the underlying offense. The underlying offense in this case would be aggravated assault, § 2A2.2. Since Defendant's relevant acquitted conduct includes conduct which constitutes aggravated assault[3] and involves the Smith & Wesson firearm which he was convicted of possessing, this Court can consider said conduct in applying the cross reference and calculate a higher offense level.

> **3.    Under the specific circumstances presented in this case, this court <u>should</u> consider Defendant's acquitted conduct in calculating the correct guideline range.**

The United States submits that this Court should consider Defendant's acquitted conduct as relevant conduct to the felon in possession conviction and, in accordance with § 2X1.1, calculate the base offense level by cross referencing from the firearms guideline, § 2K2.1, to the guideline for aggravated assault, § 2A2.2. The Eleventh Circuit has held that cross-referenced conduct in 2K2.1 "must fall under the definitions of relevant conduct found in § 1B1.3." *United States v. Williams*, 431 F.3d 767, 772 (11th Cir. 2005) (discussing cross reference provision in § 2K2.1). The United

---

[3] "Aggravated assault" is defined as a "felonious assault that involved (A) a dangerous weapon with intent to cause bodily injury (i.e., not merely to frighten) with that weapon; (B) serious bodily injury; or (C) an intent to commit another felony." U.S.S.G. § 2A2.2, Application Note 1. A "'dangerous weapon' has the meaning given that term in § 1B1.1, Application Note 1" which is "(i) an instrument capable of inflicting death or serious bodily injury; or (ii) an object that is not an instrument capable of inflicting death or serious bodily injury but (I) closely resembles such an instrument; or (II) the defendant used the object in a manner that created the impression that the object was such an instrument (e.g., a defendant wrapped a hand in a towel during a bank robbery to create the appearance of a gun)." U.S.S.G. § 2A2.2, Application Note 1; U.S.S.G. § 1B1.1, Application Note 1(D).

States contends that Defendant's acquitted conduct of discharging the Smith & Wesson firearm at Deputies of the United States Marshals Service (i.e., the aggravated assault on said Deputies) is within the relevant conduct of the convicted firearm offense as said conduct by Defendant falls within "all acts and omissions, committed, aided, abetted, counseled . . . or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction." U.S.S.G. § 1B1.3(a)(1)(A). The Court should find the testimony of Deputies Alston, Hamilton, Jackson and Clark to be credible, and be persuaded by at least a preponderance of the evidence that Defendant discharged the Smith & Wesson at the Deputies of the United States Marshals Service with the intent to cause bodily injury.[4] *See United States v. Samuels*, __ F.3d __ , 2008 WL 962834. *8-9 (7th Cir. April 10, 2008) (finding that district court did not err in applying cross reference guideline for aggravated assault to defendant's conviction of aiding and abetting felon in possessing firearm which was used in assault). Accordingly, the United States submits that the aggravated assault is relevant conduct to Defendant's possession of the Smith & Wesson and should be considered by this Court in calculating Defendant's base offense level.

In addition, pursuant to § 1B1.3(a), the relevant conduct of Defendant's discharge of the Smith & Wesson firearm at the Deputy Marshals should be considered by the Court in determining any specific offense characteristics and applicable adjustments in Chapter Three. *See* U.S.S.G. § 1B1.3(a). The United States submits that the specific offense characteristic in § 2A2.2(b)(2)(A) should be applied in this case because the Smith & Wesson firearm was discharged. Further, this Court should apply the official victim adjustment set forth in § 3A1.2(c)(1) and increase the offense

---

[4] The United States notes that such a finding is not inconsistent with the jury's finding that this fact had not been proved beyond a reasonable doubt.

level by 6 levels. The Court should find Deputy Hamilton's testimony to be credible and be persuaded by a preponderance of the evidence that Defendant, having reasonable cause to believe that Deputy Hamilton was a law enforcement officer, assaulted Deputy Hamilton during the course of the convicted offense of felon in possession, in a manner creating a substantial risk of serious bodily injury.

### The court should consider the acquitted conduct in determining the sentence as a variance.

Furthermore, the United States submits that, depending upon the calculation of the applicable guideline range, the Court should consider the acquitted conduct in determining the sentence as a variance from the guidelines pursuant to 18 U.S.C. § 3553(a).[5] Under § 3553(a), the Court shall consider the following factors in determining the particular sentence to be imposed:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the sentencing guidelines;

(5) any pertinent policy statement – (A) issued by the Sentencing Commission subject to any amendments made to such policy statement by act of Congress; and (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

---

[5] The United States addresses the variance inquiry posed by the Court in the event that the guidelines range recommended by the probation officer does not adequately reflect a sufficient sentence for Defendant.

(7)      the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).  As aforementioned, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.  In that vein, regardless of how the guidelines relevant conduct issue is resolved, the Court should consider the acquitted conduct of Defendant under § 3553(a)(1) ("the nature and circumstances of the offense and the history and characteristics of the defendant") and § 3553(a)(2)(C) ("the need for the sentence imposed . . . to protect the public from further crimes of the defendant").  The Court should impose a sentence greater than the guidelines range[6] and near the ten year statutory maximum for the felon in possession conviction because Defendant's acquitted conduct of discharging the Smith & Wesson firearm at the Deputy Marshals indicates that he possessed the firearm during violent circumstances and poses a danger to society.  Accordingly, the United States submits that such conduct by Defendant warrants a sentence higher than the guidelines range.

Respectfully submitted this the 25th day of April, 2008.


LEURA G. CANARY
UNITED STATES ATTORNEY


/s/ Jerusha T. Adams
JERUSHA T. ADAMS
Assistant United States Attorney

---

[6] The United States apologizes for the generic language in regard to "the guidelines range" but it simply cannot estimate the guidelines range at this time based upon the unknown criminal history of Defendant.

Post Office Box 197
Montgomery, Alabama 36101-0197
334-223-7280 phone    334-223-7135   fax
jerusha.adams@usdoj.gov

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO.  2:07-cr-165-MHT |
| | ) | |
| ANDREAS JEJUAN SMITH | ) | |

## **CERTIFICATE OF SERVICE**

      I hereby certify that on April 25, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Kevin L. Butler.

                      Respectfully submitted,


                      LEURA G. CANARY
                      UNITED STATES ATTORNEY


                      /s/ Jerusha T. Adams
                      JERUSHA T. ADAMS
                      Assistant United States Attorney
                      Post Office Box 197
                      Montgomery, Alabama 36101-0197
                      334-223-7280 phone    334-223-7135   fax
                      jerusha.adams@usdoj.gov