IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION NO. |
| | ) | 2:07cr165-MHT |
| ANDREAS JEJUAN SMITH | ) | (WO) |

### OPINION AND ORDER

Defendant Andreas JeJuan Smith was convicted of robbery, 18 U.S.C. § 2113(a), and possession of a handgun by a prohibited person, 18 U.S.C. § 922(g)(1).  The robbery conviction arises out of a bank robbery, and the handgun conviction arises out of the arrest of Smith nearly one month later, during which two shots were fired at the arresting officers.  Smith is now before the court for sentencing.  The parties disagree about the applicability of certain enhancements under the sentencing guidelines.

For the reasons that follow, the court holds that, for the robbery offense, Smith is subject to a "threat of death" enhancement, and that, for the handgun-possession

offense, Smith is subject to enhancements for "relevant conduct" amounting to second-degree murder, "official victim," and "obstruction of justice."

## I.  BACKGROUND

On June 22, 2007, Montgomery Police responded to a report of a bank robbery at Compass Bank. A bank teller reported that the suspect came to her window and gave her a handwritten note that stated "This is a Robbery."  The suspect stated that he had a weapon but did not want to use it and that he wanted the money.  He did not brandish any weapon.  The teller opened her drawer, and the suspect began taking money out of the drawer.  The suspect stole $ 5,920.00 before fleeing.  After several weeks, police identified the robber as Smith and a warrant was issued for his arrest.

On July 20, 2007, at about 11 or 11:30 p.m., a United States Marshal Service task force went to arrest Smith after receiving a report that he would be at a friend's

2

house.  Two task force members knocked on the front door, and Smith answered the door, cracking it open several inches and peering out.  The officers announced their identity, and Smith slammed the door shut.  As the officers kicked the door open, two shots were fired into the door from the inside.  One officer, Deputy United States Marshal Hamilton, ran around to the back of the home and entered the house.  He saw three men inside, including Smith, who dropped a handgun as he attempted to flee.  Smith and the two other men, Willie Jackson and Jamal Clarke, were taken into custody.

Based on the above events, Smith was charged with (1) robbery of Compass Bank in violation of 18 U.S.C. § 2113(a); (2) assault of a federal officer in violation of 18 U.S.C. § 111(b); (3) carrying a firearm during a crime of violence (the assault of a federal officer) in violation of 18 U.S.C. § 924(c)(1)(A)(iii); and (4) being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  A jury found Smith guilty of the

first and fourth counts and not guilty of the second and
third counts.

At Smith's sentencing hearing on October 8, 2008, the
government sought several enhancements under the United
States Sentencing Guidelines.   First, the government
argued that Smith's statements during the robbery amount
to a "threat of death" within the meaning of U.S.S.G. §
2B3.1(b)(2)(F) that subjects him to a two-level
enhancement.   Second, the government argued that Smith's
conduct at the time of his arrest is relevant to the
handgun-possession charge; that the conduct amounts to
attempted first-degree murder; and that the court should
apply an enhancement under U.S.S.G. §§ 2K2.1(b)(6) or
2K2.1(c)(1)(A) based upon that finding.   Third, the
government argued that Smith is subject to a six-level
"official victim" enhancement pursuant to U.S.S.G.
§ 3A1.2(c)(1) because the shooting at the time of his
arrest involved law-enforcement officers.   Fourth, the
government sought a two-level enhancement for

4

"obstruction of justice" pursuant to U.S.S.G. § 3C1.1, contending that Smith asked a trial witness to lie about who fired the shots.

The court considers each issue in turn.

## II.  THE ENHANCEMENT ISSUES

### A.  Threat of death

U.S.S.G. § 2B3.1(b)(2)(F) provides for a two-level enhancement "if a threat of death was made" during the course of a robbery.  The government argues that Smith's oral and written statements during the robbery amounted to a threat of death: Smith gave the teller a handwritten note that stated "This is a robbery," and orally stated that he had a weapon but did not want to use it.  Smith contends that his statements and conduct were insufficient to constitute a threat of death within the meaning of § 2B3.1(b)(2)(F) because he did not expressly threaten the teller with death or brandish a weapon during the robbery.

5

Commentary note 6 to § 2B3.1(b)(2)(F) explains that a threat of death "may be in the form of an oral or written statement, act, gesture or combination thereof. ... [T]he defendant does not have to state expressly his intent to kill the victim." The relevant inquiry is whether the defendant "engaged in conduct that would instill in a reasonable person, who is a victim of the offense, a fear of death." Id. In <u>United States v. Murphy</u>, 306 F.3d 1087 (11th Cir. 2002), the defendant gave the teller a note that said "You have ten seconds to hand me all the money in your top drawer. I have a gun. Give me the note back now." Id. at 1089. The Eleventh Circuit Court of Appeals found the defendant's statements sufficient to place a reasonable person in fear of death. Smith's statements are virtually indistinguishable. His reference to a weapon, as well as the context in which it occurred, created an implicit threat that he would use his weapon to harm the teller if she did not comply with his demand.

6

Because Smith's conduct would place a reasonable person in fear of death, the court will apply the threat-of-death enhancement.

### B. Attempted murder based on relevant conduct

The government argues that Smith fired the gun at the arresting officers and that this conduct is relevant to the handgun-possession offense under U.S.S.G. § 1B1.3. The government further contends that, because of this conduct, Smith used or possessed the gun "in connection with" another offense within the meaning of §§ 2K2.1(b)(6) and 2K2.1(c)(1)(A), and the court must increase the base offense level accordingly.[1] In its

----

1. U.S.S.G. § 2K2.1(b)(6) provides for a four-level enhancement "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense."

U.S.S.G. § 2K2.1(c)(1)(A) provides: "If the defendant used or possessed any firearm or ammunition in connection

(continued...)

briefs, the government argued that this "other offense" was aggravated assault; at sentencing, the government argued that it was attempted first-degree murder or, in the alternative, attempted second-degree murder.

Smith counters that the government has not proved that he fired the shots; regardless, this conduct is not relevant to the possession charge to the extent that the jury's verdict was based upon its belief that Smith possessed the gun at a time other than the shooting; and the conduct amounts at most to aggravated assault, not attempted murder in the first or second degree.[2]

_____

(...continued)
with the commission or attempted commission of another offense, or possessed or transferred a firearm or ammunition with knowledge or intent that it would be used or possessed in connection with another offense, apply ... § 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than that determined above."

   2.  In his briefs, Smith contended that considering this conduct violated his Fifth and Sixth Amendment rights, as well as the Double Jeopardy clause, because he was acquitted of the shooting.   However, at the sentencing hearing, Smith's counsel conceded that controlling Eleventh Circuit precedent forecloses these
(continued...)

Based on the testimony presented at initial sentencing and at trial, the court finds that the government has proved by a preponderance of the evidence that Smith fired the shots at the door. Every witness who was present at the time of the arrest testified that Smith was the one who answered the door. Hamilton testified, credibly, that he saw Smith holding the gun moments after it was fired. Equally importantly, the other individuals present testified that they did not fire the shots. Finally, the court is persuaded by the positioning of the three individuals in the home at the time that Hamilton gained entry that only Smith had the opportunity to fire the gun. The court does not find persuasive Smith's contention that he picked up the gun after someone else fired it, wiped it off, and put it down.

Smith's challenge to the relevance of the conduct is similarly without merit because evidence at trial showed

_____

(...continued)
arguments, and so the court does not address them here.

9

that he possessed the gun only on the evening of July 20, 2007, the same day as the arrest.   U.S.S.G. § 1B1.3(a)(1)(A) provides that relevant conduct includes "all acts and omissions committed ... by the defendant ... that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense."  Because Smith shot the gun <u>during</u> the commission of the offense of conviction (possession of the gun on July 20, 2007), the conduct is relevant and Smith possessed the gun "in connection with" another offense within the meaning of 2K2.1(b)(6) and 2K2.1(c)(1)(A).

The question remains, however, how to characterize this other offense.   Smith's conduct did not, as the government contends, amount to attempted first-degree murder.  First-degree murder is defined in relevant part as "the unlawful killing of a human being with malice aforethought ... or committed in the perpetration of, or

10

attempt to perpetrate, any ... escape." 18 U.S.C.
§ 1111. The government does not contend that Smith's
actions were premeditated, but rather, that the so-called
attempted murder was committed during an escape. The
government's position is that Smith's attempt to evade
arrest falls within the meaning of escape under 18 U.S.C.
§ 1111.

The federal crime of escape is defined at 18 U.S.C.
§ 751(a), which reads, in relevant part:

> "Whoever escapes or attempts to escape
> from the <u>custody</u> of the Attorney General
> or his authorized representative, or
> from any institution or facility in
> which he is <u>confined</u> by direction of the
> Attorney General, or from any <u>custody</u>
> under or by virtue of any process issued
> under the laws of the United States by
> any court, judge, or commissioner
> [United States magistrate judge], or
> from the <u>custody</u> of an officer or
> employee of the United States pursuant
> to lawful arrest, shall, if the <u>custody</u>
> <u>or confinement</u> is by virtue of an arrest
> on a charge of felony, or conviction of
> any offense, be fined under this title
> or imprisoned not more than five years,
> or both ...."

Id. (emphasis added).  The plain language of the statute requires that the defendant be "confined" or in "custody" at the time of the attempt to flee.  See also United States v. Rodriguez-Fernandez, 234 F.3d 498, 500 (11th Cir. 2000) (describing elements of federal crime of escape as including requirement that defendant be in government custody).  Smith was not in custody prior to or at the time of the shooting; at that point, he was inside the home and the United States Marshals, who had done nothing more than knock on the door and identify themselves, were outside.  At best, Smith was attempting to resist arrest.  Because Smith was not in custody at the time that he attempted to flee, he was not engaged in "escape" at the time the shots were fired.  Accordingly, the government has not proved the predicate offense for felony murder, and the relevant conduct does not amount to attempted first-degree murder.

The closer question is whether the government has proved by a preponderance of the evidence that Smith

possessed the requisite mental state for aggravated assault or attempted second-degree murder.  In order to prove that Smith engaged in aggravated assault, the government need show only that Smith intended to assault the officers.  See 18 U.S.C. 111; United States v. Feola, 420 U.S. 671, 684 (1975) ("All the statute requires is an intent to assault.").  By contrast, in order to prove second-degree murder, the government must prove that Smith acted "with malice aforethought."  See 18 U.S.C. 1111 ("Murder is the unlawful killing of a human being with malice aforethought.").

"'Malice aforethought' is a legal term of art that describes the several mental states that are associated with murder"; it describes "several kinds" of murder. United States v. Campa, 529 F.3d 980, 1009 (11th Cir. 2008) (citing 2 Wayne R. LaFave, Substantive Criminal Law § 14.1(a) (2d ed. 2003)).  With respect to second-degree murder, they include: (1) intent-to-kill murder, (2) intent-to-do-serious-bodily-injury murder, (3) depraved-

13

heart murder, and (4) felony-murder, where the felony is not among those enumerated in the first-degree portion of the statute. 2 Wayne R. LaFave, Substantive Criminal Law § 14.7(e) (2d ed. 2003).

The court finds that Smith acted with depraved-heart malice. Depraved-heart malice "may 'be established by evidence of conduct which is reckless and wanton, and a gross deviation from a reasonable standard of care, of such a nature that a jury is warranted in inferring that the defendant was aware of a serious risk of death or serious bodily harm.'" United States v. Serawop, 410 F.3d 656, 663 n.4 (10th Cir. 2005) (quoting United States v. Soundingsides, 820 F.2d 1232, 1237 (10th Cir. 1987); see also United States v. Black Elk, 579 F.2d 49, 51 (8th Cir. 1978).

The critical fact is that Smith fired two shots at chest-level through the door that stood between him and the United States Marshals. In doing so, Smith cannot plausibly contend that he was not "aware of a serious

14

risk of death or serious bodily harm." Had Smith aimed
higher in the door, or at the floor or ceiling, the court
might reach a different result. Even though Smith may
not have desired to hurt the arresting officers or aimed
the gun with the intention of killing the officers, the
court is convinced that firing a gun directly at the
officers was such a gross deviation from the standard of
care that the court finds that Smith demonstrated
depraved-heart malice. See United States v. Milton, 27
F.3d 203, 208 (6th Cir. 1994) (firing two shots into
victim's car constituted gross deviation from reasonable
standard of care), cert. denied, 513 U.S. 1085 (1995).

Accordingly, the government has proved that Smith's
conduct amounted to attempted second-degree murder, and
the court need not reach whether his conduct amounted to
aggravated assault.

## C. Official victim

Under U.S.S.G. § 3A1.2(c)(1), the court applies a six-level enhancement "[i]f, in a manner creating a substantial risk of serious bodily injury, the defendant or a person for whose conduct the defendant is otherwise accountable ... knowing or having reasonable cause to believe that a person was a law enforcement officer, assaulted such officer during the course of the offense or immediate flight therefrom." "Subsection (c) applies in circumstances tantamount to aggravated assault ... against a law enforcement officer, committed in the course of, or in immediate flight following, another offense." U.S.S.G. § 3A1.2(c)(1), comment. n. 4(A).

The government contends that Smith is subject to this enhancement because he knew the people at the door were law-enforcement officers. Smith argues that the government has not proved that he knew the people at the door were law enforcement, pointing to his own trial testimony to the contrary. However, Deputy Hamilton's

16

testimony that he announced himself as law enforcement when Smith opened the door is more credible.   Equally importantly, both officers at the door were wearing gear that identified them as law-enforcement officers, including United States Marshals Service badges.

Because Smith knew the people at the door were law-enforcement officers, the court will apply the official-victim enhancement.

### D.   Obstruction of justice

The government contends that Smith tried to convince one of the other men present at the shooting (Jackson) to tell police that the third person (the homeowner, Clarke) fired the shots.   Based on this conduct, the government asks the court to apply a two-level adjustment for obstructing and impeding the administration of justice under U.S.S.G. § 3C1.1.

Section 3C1.1 provides for a two-level enhancement when "(A) the defendant willfully obstructed or impeded,

17

or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct, or (ii) a closely-related offense." Commentary note 4(a) to this guideline describes "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness or juror, directly or indirectly, or attempting to do so" as constituting obstruction. U.S.S.G. § 3C1.1, comment. n. 4(a). The government alleges that Smith sought to "unlawfully influence" Jackson. Although the guidelines do not define "unlawful influence," the Eleventh Circuit has found that a defendant's urging a witness to lie to the police could constitute "unlawful influence." <u>United States v. Amadeo</u>, 370 F.3d 1305, 1319 (11th Cir. 2004).

Based on the testimony of Jackson and Smith, the court finds that Smith asked Jackson to lie and testify

18

that Clark fired the shots.  Jackson testified at trial
that Smith asked him to say that Clarke fired the shots;
Jackson also testified that Clarke did not actually fire
the shots. Because Smith was actually the one to fire the
gun, his request was an attempt to "unlawfully influence"
Jackson.  For this reason, the court will apply the
obstruction of justice enhancement.

                              ***

     For the above reasons, it is ORDERED that the
following enhancements apply to defendant Andreas JeJuan
Smith:

     (1) Threat  of  death  pursuant  to  U.S.S.G.
§ 2B3.1(b)(2)(F);

     (2) Attempted  second-degree  murder  pursuant  to
U.S.S.G. § 2K2.1(b)(6) or U.S.S.G. § 2K2.1(c)(1)(A);

     (3) Official  victim  pursuant  to  U.S.S.G.
§ 3A1.2(c)(1); and

(4) Obstruction of justice pursuant to U.S.S.G. § 3C1.1.

DONE, this the 12th day of May, 2009.

        /s/ Myron H. Thompson
       UNITED STATES DISTRICT JUDGE