```
      IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

          MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


UNITED STATES OF AMERICA    )
                            )
    v.                      )   CRIMINAL ACTION NO.
                            )      2:07cr165-MHT
ANDREAS JEJUAN SMITH        )         (WO)
```

OPINION

Defendant Andreas JeJuan Smith was convicted of robbery, 18 U.S.C. § 2113(a), and possession of a handgun by a prohibited person, 18 U.S.C. § 922(g)(1). The robbery conviction arises out of a bank robbery, and the handgun conviction arises out of the arrest of Smith nearly one month later. On May 20, 2009, Smith appeared before the court for sentencing based upon a Sentencing Guidelines range of 210 to 262 months. The court determined that a 'variance' was warranted and gave him a sentence of 153 months. While the court orally gave its reasons for the variance, it promised that a written

opinion setting forth its reasons in more detail would follow. This is the promised opinion.

## I.  BACKGROUND

On June 22, 2007, Montgomery Police responded to a report of a bank robbery at Compass Bank.  After several weeks, police identified the robber as Smith and a warrant was issued for his arrest.  When a United States Marshal Service task force went to arrest Smith at a friend's home, two shots were fired at arresting officers from inside.  Fortunately, neither officer at the door was harmed.

Based on the above events, Smith was charged with (1) robbery; (2) assault of a federal officer; (3) carrying a firearm during a crime of violence (the assault of a federal officer); and (4) being a felon in possession of a firearm.  A jury found Smith guilty of bank robbery and illegally possessing a firearm, but acquitted him of

2

assaulting a federal officer and carrying a firearm during a crime of violence.

At Smith's sentencing hearing on October 8, 2008, the government sought several enhancements under the United States Sentencing Guidelines relating to the handgun offense.  First, the government argued that Smith's conduct at the time of his arrest was relevant to the handgun-possession charge; that the conduct amounted to attempted first-degree murder; and that, as a result, an enhancement under U.S.S.G. § 2K2.1(b)(6) or § 2K2.1(c)(1)(A) should apply.  Second, the government argued that Smith was subject to a six-level "official victim" enhancement pursuant to U.S.S.G. § 3A1.2(c)(1) because the shooting at the time of his arrest involved law-enforcement officers.  Third, the government sought a two-level enhancement for "obstruction of justice" pursuant to U.S.S.G. § 3C1.1, contending that Smith asked a trial witness to lie about who fired the shots.  The court concluded that the government proved, by a

3

preponderance of the evidence, that Smith fired the shots, and, as a result, each enhancement applied, although the court concluded that the relevant conduct amounted, at most, to second-degree murder, not first-degree murder as the government contended. United States v. Smith, 2009 WL 1311850 (M.D. Ala. 2009) (Thompson, J.).

Smith's sentencing resumed on May 20, 2009, and, based upon these findings, a new Guidelines range was calculated. The new offense level was 35, and the criminal history category was III. This generated a range of 210 to 262 months. The government asked the court to impose a sentence of 262 months. Smith, through counsel, asked for a variance, down to a sentence within the range that would apply before the various enhancements. By the court's calculation, this range, based on an offense level of 26 and a criminal history category of III, was 78 to 97 months. As stated, the

4

court determined that a variance was warranted, but only to the extent of a sentence of 153 months.

## II. DISCUSSION

Although district courts are no longer bound to follow the Sentencing Guidelines after <u>United States v. Booker</u>, 543 U.S. 220 (2005), they still must consult the Guidelines and take them into account when sentencing. <u>United States v. Crawford</u>, 407 F.3d 1174, 1178 (11th Cir. 2005); <u>see also</u> 18 U.S.C. § 3553(a)(4) & (5).  After calculating the correct Guidelines range, the court may impose a more severe or more lenient sentence, as long as the sentence is reasonable.  <u>Crawford</u>, 407 F.3d at 1179. The factors set forth in 18 U.S.C. § 3553(a) continue to guide sentencing and will necessarily inform whether a sentence is reasonable.[1]  <u>Booker</u>, 543 U.S. at 261-62.  The

---

   1. Section 3553(a) requires courts to consider: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence imposed to punish the offender, protect the public from the defendant, rehabilitate the defendant, and deter others; (4) the kinds of sentences

primary goal of sentencing is to impose a sentence that is sufficient, but not greater than necessary, to punish the offender, protect the public from further crimes by the defendant, rehabilitate the defendant, and deter other people from committing similar crimes. 18 U.S.C. § 3553(a).

A Guidelines sentence for Smith was between 210 to 262 months.[2] However, after considering the Guidelines and the factors described in § 3553(a), the court imposed a sentence of 153 months. In this case, fairness required such a variance because the relevant conduct so dramatically increased the sentence that it became the "tail that wags the dog"; and the court found it

---

available; (5) the sentencing range established by the Sentencing Guidelines; (6) any pertinent policy statements issued by the Sentencing Commission; (7) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (8) the need for restitution. 18 U.S.C. § 3553(a).

2. If the court had found, as the government requested, that Smith's conduct amount to first-degree murder, his Guidelines range would have been 360 months to life.

particularly problematic to allow such dog-wagging where the relevant conduct was proved solely on a preponderance-of-evidence standard and clearly not prove beyond a reasonable doubt to a jury.  That is, the court was concerned that the weight of the evidence was not sufficient to support so dramatic an increase.

In the context of 'departures,' some courts have observed that sentencing courts must be careful to ensure that enhancements based on relevant conduct that significantly rachet up a sentence do not become the tail that wags the dog of the substantive offense of conviction.  See United States v. Lombard, 72 F.3d 170 (1st Cir. 1995) (a sentence enhancement should not function as a "'tail which wags the dog' of the defendant's offense of conviction.") (quoting McMillan v. Pennsylvania, 477 U.S. 79, 88 (1986)); United States v. Gigante, 94 F.3d 53, 56 (2d Cir. 1994).  In part as protection against this dog-wagging, courts may consider the weight of the evidence supporting the factual

7

findings that form the basis for substantial enhancements. Gigante, 94 F.3d at 56. That is, where the enhancement is quite substantial, courts should consider where on the continuum of certainty the factual findings rest, and factor this certainty or uncertainty into their evaluation of the reasonableness of the sentence generated by the Guidelines.

As explained by the Second Circuit Court of Appeals in Gigante,

> "[T]he preponderance standard is no more than a threshold basis for adjustments and departures, and the weight of the evidence, at some point along a continuum of sentence severity, should be considered with regard to both upward adjustments and upward departures. ... Where a higher standard, appropriate to a substantially enhanced sentence range, is not met, the court should depart downwardly. Because the risk of factual error in a series of adjustments, each of which involves conduct proven by a bare preponderance, is a circumstance present at least 'to a degree' not adequately considered by the Commission, see 18 U.S.C. § 3553(b), a downward departure would be warranted."

Id; see also United States v. Cordoba-Murgas, 233 F.3d 704, 708 (2d Cir. 2000) ("in certain cases, the enhancement of a sentence based upon a defendant's 'relevant conduct,' if done without regard to the weight of the evidence proving the relevant conduct, may result in a total term of incarceration which is excessive, inappropriate, and unintended under Sentencing Guidelines").

The reasoning these courts applied in deciding whether to depart when the sentence enhancement is quite substantial is made even more compelling where, as here, a jury of 12 persons has actually determined that the relevant conduct was not proved beyond a reasonable doubt.  The fact of acquittal by 12 peers, while not a determination that the defendant did not engage in the conduct, would be certainly probative of how certain a judge should be that his or her finding should withstand scrutiny under a higher evidentiary standard.  This does not mean that courts may not consider acquitted conduct;

9

obviously, it is well-established that courts may consider acquitted conduct when sentencing defendants so long as that conduct is proved by a preponderance of the evidence. United States v. Watts, 519 U.S. 148, 157 (2006) (per curiam). Rather, at sentencing it would be appropriate to consider the fact of acquittal as well, particularly in those cases where the acquitted conduct will form the basis of substantial enhancements to the defendant's sentence.

Although the Eleventh Circuit Court of Appeals has not decided whether departures based on these considerations are warranted, the court need not reach that particular question. In this case, the court was not asked to consider whether a departure was appropriate, but rather was asked to consider whether a variance was warranted under the § 3553(a) factors. The court found that the above reasoning, made in the context of the demanding standards of departures governed by the Guidelines at §§ 4A1.3 and 5K2, was particularly

informative with respect to variances based on the § 3553(a) factors.  Cf. United States v. deVegter, 260 Fed. Appx. 240, 242 (11th Cir. 2008) ("[T]hat the district court varied downward where we would not depart downward does not significantly concern us.  A downward departure implicates the appropriate calculation of the Guidelines range, while a downward variance implicates consideration of the factors set forth in 18 U.S.C. § 3553(a).").

In sum, this court believed that, where enhancements based on findings by the court substantially increase the sentence, a court may, and perhaps should, consider the weight of the evidence in deciding whether a downward variance is appropriate under the § 3553(a) factors and that this argument is even more compelling in cases such as the one at hand where a jury, applying a higher standard, found that the conduct that forms the basis for the dramatic increase was not proved.  As noted above, the primary goal of sentencing is to "impose a sentence

11

that is sufficient, but not greater than necessary," to punish the offender, protect the public from further crimes by the defendant, rehabilitate the defendant, and deter other people from committing similar crimes.  18 U.S.C. § 3553(a).  Section § 3553(a) explicitly requires sentencing courts to consider whether the sentence will "reflect the seriousness of the offense, ... promote respect for the law, and ... provide just punishment for the offense."  The court's concerns about the magnitude of the enhancements relative to the offense and about the reliability of the evidence supporting the findings, related precisely to these considerations.

Smith's case presented a special confluence of circumstances that warranted a downward variance.  His Guidelines range maximum jumped from 97 months to 262 months--a difference of more 165 months--based solely upon findings that satisfied only the preponderance-of-the-evidence standard.  As is the case for every sentencing court, this court was in the unique position

of knowing the margin by which the evidence supporting the factual findings exceeded the preponderance of the evidence standard. In this case, that margin was a fine one. The court's familiarity with the evidence and the fact that a jury acquitted Smith of the same conduct convinced it that the weight of the evidence could not adequately support so heavy an increase in Smith's sentence.

At the same time, however, the court did not ignore the seriousness of the offense conduct, which warranted a sentence higher than that generated by the pre-enhancement Guidelines range of 78 to 97 months. In addition, the court felt that a sentence even at the very top of the pre-enhancements range would not adequately protect the public from further crimes by Smith and adequately deter criminal conduct by others.

Accordingly, the court sentenced Smith to the mid-point between the highest end of the pre-enhancement range (97 months) and the lowest end of the

post-enhancement range (210 months): 153 months.  The court was satisfied that this sentence was sufficient, but not greater than necessary, to satisfy the factors reflected in 18 U.S.C. 3553(a).

DONE, this the 22nd day of May, 2009.

                               /s/ Myron H. Thompson
                              **UNITED STATES DISTRICT JUDGE**